**Tracey PICKETT, Appellant,**

v.

**J. J. WILLIS TRUCKING COMPANY, Appellee.**

**No. A2754.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 15, 1981.

Gerald H. Buttrill, Aldrich, Buttrill & Kuhn, Houston, for appellant.

Bill R. Bludworth, Wood, Lucksinger & Epstein, Houston, Richard L. Nelson, Johnson, Bromberg, Leeds & Riggs, Dallas, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

J. CURTISS BROWN, Chief Justice.

Plaintiff below appeals from a judgment non obstante veredicto in a suit to recover damages for loss of his truck and for lost business profits. The questions presented are whether the lease agreement in force at the time of the accident exculpated defendant trucking company from its own negligence, and, if not, are damages for lost profits allowable. We reverse the judgment of the trial court holding that the lease agreement did not exculpate defendant from its own negligence and render judgment for plaintiff for the value of the truck with prejudgment interest at the lawful rate. We deny recovery for lost profits.

Tracey Pickett (Pickett or appellant) owned a 1970 Freight Line cab-over truck which was the subject matter of a lease agreement with J. J. Willis Trucking Company (Willis). The lease set out the business arrangement between the parties providing basically that Pickett would lease the truck to Willis for a percentage of the revenues generated by it, cover all expenses and either drive the truck himself or hire a driver. Willis had the necessary permits issued by the Texas Railroad Commission and the Interstate Commerce Commission for intrastate and interstate hauling. The original lease agreement was signed on April 10, 1972, and an amendment to the agreement was signed on April 2, 1973. The lease as amended contained the following provisions:

> ... Lessee shall not be responsible to Lessor for any loss or damage caused to the Motor Equipment by fire, theft, act of God, collision or otherwise. Lessor agrees at its sole cost and expense to purchase and to maintain adequate collision insurance, fire insurance, theft insurance and bobtail insurance, and, except as provided in paragraph I below, Lessor hereby expressly agrees to indemnify and hold Lessee harmless from any and all loss, liability or responsibility arising out of or in any manner relating to the ownership, operation or use of the Motor Equipment whether resulting from fire, theft or collision with another motor vehicle or object, or otherwise.

Pickett departed Houston on April 11, 1974, for Arizona pulling a trailer belonging to Willis. Prior to the trip Willis had taken the trailer to International Steel Fabricators to be loaded and returned it to the Willis yard. The maintenance of the trailer was the sole responsibility of Willis. While traveling near Columbus, Texas, Pickett's truck suddenly and unexpectedly overturned due to a malfunction of the trailer. No other vehicles were involved. The truck sustained heavy damage and was considered a total loss.

Suit was filed by Pickett. In a trial on December 2, 1980, special issues answered by the jury exonerated Pickett of any contributory fault and found that the accident was proximately caused by the negligence of Willis in failing to properly maintain and inspect the trailer in question. Damages were established at $14,540.00 for the loss of the truck [1] and $36,000.00 for lost business profits.

Willis filed a Motion for Judgment Non Obstante Veredicto which was granted by the trial court. Final judgment was en-

---

1. Special issues established the market value of the truck to be $17,040.00 and the salvage value to be $2500.00. ($17,040.00 - $2500.00 = $14,540.00)

tered that Pickett take nothing. The judgment reflects the basis of the trial court's ruling as the provision in the lease agreement (emphasized above) that lessee (Willis) would not be responsible to lessor (Pickett) for any damage caused to the motor equipment. The trial court held the agreement was in effect on the date of the accident and was controlling. Pickett perfected appeal to this Court.

Pickett brings seven points of error which will be restated, grouped and dealt with accordingly. He complains that the trial court erred in sustaining Willis' motion for judgment non obstante veredicto and entering a take nothing judgment because (1) the amendment to the lease which contained the exculpatory language violated provisions of the Interstate Commerce Act restricting limitation of liability by common carriers (points of error 1 & 3); (2) the lease agreement should not have been construed as exculpating Willis from its own negligence (points of error 1, 4, 5, & 6); (3) the trailer which caused the loss in question was not a subject matter of the lease agreement and was at all times under the exclusive care and control of Willis (points of error 1 & 2); and (4) the lease was against public policy and void due to the unequal bargaining power of the parties (points of error 1 & 7). Willis brings one cross-point of error complaining of the trial court's submission of a special issue concerning lost business profits to the jury and failure to disregard the jury's answer to it.

■ A portion of the Carmack Amendment and the Cummings Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11) (1951), control the limitation of liability by motor carriers engaged in interstate commerce. The statutory provisions impose on common carriers the liability of insurer to which they were held at common law. This liability can be limited or qualified by special contract, provided the limitation or qualification is just and reasonable, and does not exempt the carrier from loss or responsibility due to negligence. *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1912); *Chicago, St.*

*Paul, Minneapolis, & Omaha Railway v. Latta*, 226 U.S. 519, 33 S.Ct. 155, 57 L.Ed. 328 (1912); *Missouri, Kansas, & Texas Railway v. Harriman Brothers*, 227 U.S. 657, 33 S.Ct. 397, 57 L.Ed. 690 (1913).

■ The statutory provisions and case authority make it clear that the statutory purpose is protection of the general public. The statute is intended to protect holders of bills of lading, those who have title to or interest in goods transported by the carrier, and third parties who may be injured by acts of a carrier done in the performance of its duty to the public as a carrier. This rule restricting limitation of liability rests on public policy that freedom of contract may be justifiably limited to achieve public ends. In circumstances where a company is acting outside of the performance of its duty as a common carrier, however, the policy restricting limitation of liability has no application. *Santa Fe, Prescott, & Phoenix Railway v. Grant Brother's Construction Co.*, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787 (1913); *Michigan Miller's Mutual Fire Insurance Co. v. Canadian Northern Railway*, 152 F.2d 292 (8th Cir. 1945). We see no reason why the public would have any interest in which of the parties to this agreement accepted liability for damage to the motor equipment and hold that the cited provisions of the Interstate Commerce Act are not applicable to the facts before us. Restated point of error 1 is overruled.

■ Appellant next complains of the trial court's construction of the lease agreement. The trial court found the provisions of the lease agreement sufficient to exculpate Willis from liability despite the finding that the accident was caused by its own negligence in maintaining and inspecting the trailer. The well settled general rule in Texas is that a contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms. *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 822 (Tex.1972).

Willis would have us classify the sentence of the lease containing the phrase "Lessee shall not be responsible to Lessor for any loss for damage caused to the Motor Equipment", which the trial court held was controlling, as a provision allocating the risk of loss. This is to be distinguished from the sentence containing the phrase "Lessor hereby expressly agrees to indemnify and hold Lessee harmless", which Willis would have us classify as an indemnity provision. Thus, Willis contends the general rule is not applicable since the controlling language is not an indemnity provision. While we see some merit in Willis' contention as a tool of analysis, we feel the policy behind the rule dictates that it be applied regardless of whether, technically, the provision in question may be more accurately called one of allocation of risk as opposed to indemnity.

The question then becomes whether the controlling language clearly indicates in unequivocal terms that Willis (Lessee) is to be indemnified for its own negligence. We think not. None of the enumerated items in the list, "fire, theft, act of God, collision", suggests that the negligence of Willis in maintaining and inspecting a trailer is to be included. Furthermore, we do not believe that the addition of the general term "or otherwise" makes the provision into a clear indication that would include such negligence.

Willis contends that this case falls within an exception to the general rule cited above which is enumerated in *Fireman's Fund, supra* at 822. The exception renders the general rule inapplicable to an

> agreement in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality as in *Mitchell's, Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775 (1957); and *Houston and T. R. Co. v. Diamond Press Brick Co.*, 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (1920).

The Supreme Court in *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208 (Tex. 1980), explained this so-called exception as actually an application of the general rule. When there is a clear expression of indemnity with respect to specific premises or instrumentalities, the indemnitor would necessarily know that he is assuming the full responsibility, regardless of whose negligence caused the loss.

We hold that the situation before us does not come under the exception for two reasons. First, we do not consider the provision relied on by the trial court as being a clear expression of indemnity. Secondly, the instrumentality which was the subject of the provision was the truck owned by Pickett and could not be considered to include all trailers which Willis owned and might ask Pickett to pull. We hold the controlling provision of the lease agreement did not exculpate Willis for its own negligence in maintaining and inspecting the trailer. Restated point of error 2 is sustained.

Appellant complains of error by the trial court because the trailer which caused the losses in question was not a subject matter of the amended lease agreement. Insofar as this point of error is not considered in the prior point, we do not think it is controlling. Restated point of error 3 is overruled.

Finally, Pickett would have us characterize the lease agreement as against public policy and void due to the unequal bargaining position of the parties. However, this point of error has no predicate in the pleadings or proof and cannot be raised for the first time on appeal. Restated point of error 4 is overruled.

By way of cross-point, Willis complains of the action of the trial court in allowing the jury to answer a special issue concerning lost business profits. We agree that lost profits in this case are in the nature of damages for loss of use. *Riddell v. Mays*, 533 S.W.2d 910 (Tex.Civ.App.— Waco 1976, no writ). When a chattel has been totally destroyed, no additional recovery for loss of use is allowed. *Carson v. Bryan*, 532 S.W.2d 711, 713 (Tex.Civ.App.—

Amarillo 1976, no writ); *Export Insurance Co. v. Herrara*, 426 S.W.2d 895, 901 (Tex. Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.). Since Pickett's truck was totally destroyed, the trial court erred in submitting the issue to the jury and in failing to disregard the jury's answer to it.

 It is also well settled that if damages can be established as of a definite time and the amount is definitely determinable by fixed rules of evidence and known standards of value, the interest is recoverable as a matter of right from the day of injury. The petition, however, must contain pleadings to support an award of prejudgment interest. *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex. 1976). In the case before us the damages were established as of the time of the accident. The market value prior to the accident and the salvage value after the accident were both proved. Appellant included a specific prayer for prejudgment interest in the petition on which he went to trial.

Therefore, the judgment that plaintiff below, Pickett, take nothing is reversed and judgment is rendered for the plaintiff below, Pickett, for $14,540.00 with interest at the rate of 6% from the day of the accident, April 11, 1974, until September 1, 1975,[2] and thereafter at the rate of 9% until paid. Costs are assessed one-half to each party.

Reversed and rendered.

---

**2.** Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon supp.1980–1981), was amended on September 1, 1975, to a rate of 9% from a rate of 6%. See also *Haag v. Pugh*, 545 S.W.2d 22, 24 (Tex.Civ. App.—Eastland 1976, no writ).