BOB ROBERTSON, INC., Appellant,

v.

John A. WEBSTER, Appellee.

No. 01–83–00212–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 27, 1984.

Lyle Sinell, Byron G. Lee Armogida & Coats, Houston, for appellant.

Edward L. Noah, Houston, for appellee.

Before DUGGAN, JACK SMITH and BULLOCK, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a judgment entered on a jury verdict awarding damages in a suit wherein the appellee alleged actions for deceptive trade practices and breach of contract. A jury found the appellant automotive dealer liable for damages resulting from false representations that it would deliver a pickup truck ordered by appellee within ten weeks. Ten points of error are presented.

Appellant, Bob Robertson, Inc., contracted on December 27, 1978, to sell appellee, John A. Webster, a 1979 model half-ton Chevrolet pickup truck, to be delivered within ten weeks. Webster paid $200 by check at that time, with the balance of $7,900 to be paid when the truck arrived from the manufacturer. In the middle of January, 1979, Webster sold his old truck and borrowed a car from a friend. He returned the borrowed car about a month later and rented one thereafter until June 5. He made numerous inquiries to the dealership by phone and in person, before and after the expiration of the ten-week period, to determine when delivery could be expected. According to Webster, he was told at one point that the auxiliary tank option he ordered was holding up the delivery. Finally, he had an attorney send a certified letter on May 21, 1979, demanding

rescission of the contract, return of his deposit, costs of the car rental, and attorney's fees.

Webster filed suit on June 28, 1979, alleging breach of contract and violation of the Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com.Code Ann. sec. 17.41 *et seq.* (Vernon Supp.1982–83) ("DTPA"). He also sought rescission of the contract and restitution of his deposit. In July of 1979, over six months after the order was placed, the appellant dealership notified him that his truck had arrived. Webster went to see the truck, found it unsatisfactory because it was a fleetside rather than a stepside model, and did not take delivery.

Following a jury trial, the court entered a judgment based upon the following answers to special issues:

Special Issue # 1: That appellant and Webster entered into Plaintiff's Exhibit No. 1 on or about December 27, 1978, for the sale of a 1979 Chevrolet Pickup Truck to Webster;

Special Issue # 2: That appellant represented to Webster the truck would be delivered within ten weeks;

Special Issue # 3: That Webster paid $200 down under the agreement;

Special Issue # 5: That appellant's representation of delivery within ten weeks was false;

Special Issue # 5a: That the making of the false representation was not an unconscionable action or course of action;

Special Issue # 6: That Webster relied on the representation of ten-week delivery;

Special Issue # 7: That the appellant's false representation was a producing cause of damages to Webster;

Special Issue # 8: That appellant failed to perform under Plaintiff's Exhibit No. 1;

Special Issue # 8a: That such failure to perform was not due to any cause beyond the control of appellant or without the fault or negligence of appellant;

Special Issue # 9: That appellant's failure to perform was a producing cause of damages to Webster;

Special Issue # 10(a): That 30 or more days prior to filing suit Webster did not make written demand upon appellant to perform under Plaintiff's Exhibit No. 1;

Special Issue # 10(b): That 30 or more days prior to filing suit Webster did make written demand upon appellant for damages he sustained;

Special Issue # 11: That Webster sustained actual damages of $200 for loss of his down payment and $800 for the cost of car rentals as a direct result of appellant's false representation;

Special Issue # 12: That reasonable fees for Webster's attorneys for services rendered in preparation for trial are $3,600; that $2,500 is a reasonable fee if the case is appealed to the court of appeals; that $750 is reasonable if application is made for writ of error to the Supreme Court and another $750 if the writ is granted;

Special Issue # 13: That Webster's action under the DTPA was not brought in bad faith or for the purposes of harassment.

The trial court entered judgment in favor of appellee Webster for $3,100 in damages plus attorney's fees. While the judgment recites that the jury verdict was for the appellee, it does not indicate upon which appellee has prevailed. Since the judgment awards appellee three times the amount of actual damages found by the jury, the trial court apparently concluded that appellant was liable under the DTPA. This would be consistent with appellee's pleading allegations of a violation of sec. 17.46(b)(12) which declares unlawful *per se* the act of

representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

Appellee had pleaded that appellant's salesman had represented to him that

said truck would be delivered ... in accordance with its [the buy-sell agree-

ment's] terms but ... the said agreement does not confer ... that right to ... receive delivery ..., which Defendant's agent or servant represented to Plaintiff. This appeal followed the trial court's denial of appellant's motion for a new trial.

Appellant's first point of error asserts that the court erred in denying its motion for a new trial on the ground there was a fatal and irreconcilable conflict in the jury's findings on Special Issue Nos. 1 and 2, as shown above. Special Issue No. 2 was conditioned on an affirmative answer to Special Issue No. 1. Both issues were answered in the affirmative.

Plaintiff's Exhibit No. 1 is a dated but unsigned copy of the order form used by the appellant dealership, upon which is written the truck model number, specifications, optional features, and price of the vehicle ordered by appellee. Appellant contends that the front and back of that form comprised the entire agreement and that any statements as to time of delivery were merely representations of opinion and were not binding upon appellant. Appellant argues that if the jury's responses to both Special Issues No. 1 and No. 2 are considered separately and taken as true, they compel the rendition of different judgments, *i.e.*, judgment for appellant follows from the jury's response to issue one, because the merger clause on the reverse side of the order form indicates there was no other agreement than that shown in writing on the instrument, and because no delivery date was incorporated into the written agreement; judgment for appellee follows from the answer to issue two, if it is taken as true and in light of the other findings, compelling rendition of a different judgment.

 We do not agree. It is unnecessary to reach the question whether the jury's answers to the two issues are irreconcilable because there is no conflict. In reviewing jury findings for conflict, the threshold question is whether the findings are about the same material fact. *Bender v. Southern Pacific Transportation Co.,* 600 S.W.2d 257, 260 (Tex.1980). Special

Issue No. 2, inquiring as to the delivery date of the truck, is simply a means of discovering a term of the contract not contained in Plaintiff's Exhibit No. 1, *i.e.*, time of delivery. While the Exhibit 1 order form contains a provision excusing dealer liability for failure or delay in delivery due to causes beyond the dealer's control (sec. 7), that fact relates to the dealer's excuse, not its promise.

 Appellant is also incorrect in claiming a different judgment would result if Special Issue No. 1 were considered separately and taken as true. Delivery under a contract, where no time has been agreed upon, must be within a reasonable time. Tex.Bus. & Com.Code Ann. sec. 2.309 (Vernon 1968). In view of testimony by appellant's sales manager that the usual time of delivery of a special order was from four to seven weeks, appellant would have been liable for failure to deliver after the passage of six months.

The parol evidence rule, Tex.Com. & Bus. Code Ann. sec. 2.202, would be of use in resolving conflict between the terms of the order form and representations of the dealer's agent, if there were any; however, it has nothing to do with the question of whether a conflict exists. Finding no conflict, we overrule point of error one.

Appellant's second point of error asserts that the trial court erred in overruling its objection to Special Issue No. 5, which inquired:

> Do you find from a preponderance of the evidence that such representation, if any found by you in answer to Special Issue No. 2, was false?

Appellant urges in his appellate brief that the award of treble damages under the DTPA, *supra*, was founded upon the jury's affirmative answer; that the use of the word "false," by itself, taken out of the term "false, misleading or deceptive acts or practices," mischaracterizes the type of conduct the Act was designed to protect against, and that "appellant specifically objected to this change and requested the full

term, 'false, misleading, or deceptive acts or practices' be submitted."

Contrary to appellant's argument, the objection it made at trial differs from that asserted on appeal. When the court's charge, worded as set out above, was submitted to the attorneys for their inspection, appellant's counsel objected as follows:

> Bob Robertson also would object to the Court's Charge in that in Special Issue No. 5 the term "false" is used, and would tender to the Court a definition of "false, misleading or deceptive act or practice" which is the term used in the Deceptive Trade Practices Act, and I would object, number one, to Special Issue no. 5 in that the term "false" is used rather than "false, misleading or deceptive act or practice," and I would also submit a definition to the Court of "false, misleading or deceptive act."

Appellant's objection to Special Issue No. 5 was overruled by the court.

■ Rule 274, Tex.R.Civ.P., requires that a party objecting to a charge must "point out distinctly the matter to which he objects *and* the grounds of the objection." (Emphasis added). While appellant's attorney stated his objection to use of the term "false," he did not state grounds for the objection as required by Rule 274, but offered a definition of "false, misleading or deceptive acts or practice," which does not appear in the record. A requested definition that does not appear in the record cannot be considered on appeal. *Joiner v. Federal Deposit Insurance Corp.*, 488 S.W.2d 953, 954 (Tex.Civ.App.—Amarillo 1973, no writ). The stated objection lacked the specificity to apprise the court of the defect asserted. *Brantley v. Sprague*, 636 S.W.2d 224, 225 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). Further, appellant's request for a definition was not made separate and apart from its objection to the charge, as required by Rule 273, Tex.R. Civ.P., *Templeton v. Unigard Security Insur. Co.*, 550 S.W.2d 267, 269 (Tex.1976), and is therefore waived. Appellant's second point of error is overruled.

Appellant's points of error 3 and 4 attack the legal and factual sufficiency of the evidence to support the jury's findings of false representation. By its answer to Special Issue 5, the jury found that appellant's agreement to deliver the truck to Webster within ten weeks (found in Special Issue 2) was false.

Appellant's argument is essentially a restatement of his contentions in points of error one and two, *i.e.*, that the agreement shown by Plaintiff's Exhibit No. 1 was an integrated contract with no delivery time set out; that the instrument could not be altered by parol testimony; and that the only evidence showing the delivery agreement was the mere opinion statements of its salesman, barred by the parol evidence rule. Appellee responds that the terms of the written agreement placed in evidence were in no way varied or contradicted by the oral agreement to deliver within ten weeks, but were merely completed.

■ The parol evidence rule applicable to sales of goods, Tex.Bus. & Com.Code Ann. sec. 2.202, prohibits use of evidence of any prior or contemporaneous oral agreement which contradicts the terms of a written contract intended as a final expression of the parties' agreement. However, section 2.202 does not impose any assumption that, because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon. Sec. 2.202 comment 1 (Vernon 1968). *See generally* 50 Tex.Jur.2d *Sales* sections 116–120 (1969). In the case of an incomplete instrument, an exception to the parol evidence rule applies, even though fraud, accident, or mistake is not shown. *Allstate Insurance v. Furr*, 449 S.W.2d 295, 301 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.).

■ The sales order form contains the following statement:

THE FRONT AND BACK HEREOF COMPRISE THE ENTIRE AGREEMENT AFFECTING THIS ORDER AND NO OTHER AGREEMENT OR UNDERSTANDING OF ANY NATURE

CONCERNING SAME HAS BEEN MADE OR ENTERED INTO.

However, this merger clause is contradicted by the instrument itself, which refers to delivery numerous times and yet contains no delivery date. It cannot be said that an oral agreement regarding time of delivery is inconsistent with the terms of the integrated agreement, and appellant's cited authorities are unpersuasive.

Appellee Webster's testimony showed clearly that appellant did not have a truck for him until July of 1979, substantially more than ten weeks after the December, 1978 order date; that he contacted the dealership numerous times and was told that the truck would arrive in a week or two; that the sales manager told him that he did not know when the truck would come in but would find out and advise Webster; and that the sales manager never did. Appellant's sales manager, Dennis Nesselhauf, agreed that it was seven months after appellee's order before one was offered to him, and that four to seven weeks was the normal delivery time for this type truck.

■ The evidence was sufficient to support the jury's finding that appellant's representation of ten-week delivery was false. Appellant's third and fourth points of error are overruled.

By points of error five, six, nine, and ten, appellant challenges the legal and factual sufficiency of the evidence to support the findings of Special Issues 8 and 8a that appellant failed to perform under Plaintiff's Exhibit No. 1 and that such failure to perform was not excused by any cause beyond the control of appellant or by any fault or negligence of appellee.

As stated above, appellee ordered a pick-up truck from appellant on December 27, 1978, and was told by appellant's salesman he could expect delivery within ten weeks. He wanted a model with stepside fenders but was informed at the time that Chevrolet was no longer making that model. The order form called for delivery of a fleetside model. Appellant placed the order with General Motors on December 29, 1978. An auxiliary tank option appellee requested later was added to the dealer's copy of the order and was to be installed by the dealer. The order form contains a provision excusing the dealer from liability for failure to deliver or delay in delivering where the delay is due, in whole or in part, to any cause beyond its control.

Appellee testified he made frequent calls and visits to the showroom to inquire about the delay in delivery. Appellant's sales manager, Nesselhauf, testified the normal delivery time for the type of truck appellee ordered was four to seven weeks, and he agreed that seven to ten weeks was an unreasonable delivery period if General Motors had all the parts to fill the order. The sales manager's testimony also shows that appellant took orders for options without verifying their availability with GM. He testified that he called Chevrolet's Houston office during at least two visits by appellee, and, according to his testimony, passed on to appellee the explanation that the locking differential rear end appellee ordered was not available at the plant. He also stated that, when a part was delaying delivery, they would call the customer to inquire whether the customer would care to delete that option. Appellee testified, to the contrary, that the locking differential was never mentioned but that, about a month before he was notified that his truck had arrived, he was informed the auxiliary tank option was holding up the order.

In July 1979, appellee was informed that his truck had arrived, more than six months after he had placed the order and after he had filed the present suit. He refused to accept it and told the sales manager he had ordered a stepside model. He did not remember whether the truck tendered differed in any other way from the one he ordered.

■ The evidence is ample to show that appellant breached the contract by failing to make timely delivery. The conflicting evidence as to GM's part in the delay was decided by the jury in appellee's favor, and we cannot say that the verdict was so

against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951). *See Alamo Automobile Co. v. Schmidt*, 211 S.W. 804 (Tex.Civ.App.—San Antonio 1919, writ ref'd). Points of error five, six, nine, and ten are overruled.

Points of error seven and eight contend there was no evidence and insufficient evidence to support the jury's finding of car rentals as damages. The record shows that appellee rented a car from Freeway Rent-A-Car from February 27, 1979, until June 5, 1979. The rental agreement forms showing the weekly charges and appellee's charge card receipts showing payment were admitted into evidence. The total cost to appellee for car rental was $1,190.52. Appellee testified he would not have rented a car had he known that he would not be getting delivery of the truck.

The jury found, in the two parts to Special Issue No. 11 that appellee suffered loss of $200 for the down payment on the truck (11a), and $800 for the cost of car rentals (11b) as actual damages caused by appellant's false representation found in Special Issue No. 5. Appellant does not argue the damages found were excessive, but that the cost of car rental was not an appropriate item to be considered.

■ Appellee was entitled to damages for the pecuniary loss he suffered by reason of appellant's failure to deliver the truck as agreed. *See L.L. Adams d/b/a Adams Motor Company v. Eastex Finance Company*, 379 S.W.2d 355, 359 (Tex.Civ.App.—Tyler 1964, no writ). He could recover not only the down payment on the truck but also his damages, if any, resulting from the non-delivery. Tex.Bus. & Com.Code Ann. sections 2.711; 2.713; 2.715 (Vernon 1968).

■ Damages recoverable under the DTPA are the same as those recoverable at common law. *Brown v. American Transfer & Storage*, 601 S.W.2d 931, 939 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). *United Postage*

*Corp. v. Kammeyer*, 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ). Car rental expenses are includable as actual damages if proved to be a part of a plaintiff's "actual pecuniary loss including related reasonable and necessary expenses." *Hyder-Ingram Chevrolet, Inc. v. Kutach*, 612 S.W.2d 687, 689 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

Appellant urges the "general rule" that recovery cannot be had for the loss of use of a vehicle during the time required for its replacement. *Pickett v. J.J. Willis Trucking Company*, 624 S.W.2d 664 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), cited by appellant as authority, is distinguishable on its facts. In *Pickett*, the court denied recovery of replacement rentals for loss of a vehicle's use *in addition to* recovery for the vehicle's destruction.

■ Appellant argues that Webster produced no evidence that the cost of car rental as damages was in the contemplation of the parties at the time they entered in the sales agreement. This argument assumes, contrary to the jury's special issue finding, that there was no delivery period agreed to in the contract. Where delivery within an agreed period is a term of a vehicle sales contract, rental expense for transportation in the event of a breach of the delivery term is reasonably within the parties' contemplation at the time of agreement since transportation is the primary purpose of a motor vehicle. Appellant's seventh and eighth points of error are overruled.

The judgment is affirmed.