33 P.3d 543

Jerry FUKIDA, Plaintiff–Appellee,

v.

**HON/HAWAII SERVICE AND REPAIR;**
Beverly Endrizal; Hon/Hawaii Services
Inc., a Hawai'i corporation; John Does
1–10; Doe Corporations 2–10; Doe Part-
nerships 1–10; and Doe Governmental
Entities 1–10, Defendants–Appellants.

No. 22514.

Intermediate Court of Appeals of Hawai'i.

July 31, 2001.

Certiorari Granted Aug. 30, 2001.

Michael L. Freed, (Michael L. Freed &
Associates), Honolulu, on the brief, for defen-
dants-appellants Hon/Hawaii Service and Re-
pair; Beverly Endrizal; and Hon/Hawaii
Services, Inc.

Matthew K. Chung, Honolulu, on the brief,
for plaintiff-appellee.

WATANABE, Acting C.J., LIM, and
FOLEY, JJ.

**48**

Opinion of the Court by WATANABE, Acting C.J.

On May 30, 2001, Plaintiff–Appellee Jerry Fukida (Fukida) applied for a writ of certiorari, seeking review by the Hawai'i Supreme Court (the supreme court) of the memorandum opinion issued by this court in *Fukida v. Hon/Hawaii Service and Repair*, 95 Hawai'i 438, 23 P.3d 773 (App.2001). On June 12, 2001, the supreme court issued an "Order Granting [Fukida's] Application for Writ of Certiorari, Affirming in Part,[1] Vacating in Part,[2] and Remanding the Decision of the Intermediate Court of Appeals[.]" (Footnotes added.)

In remanding the case to this court, the supreme court instructed us to address the points of error raised by Defendants–Appellants Hon/Hawaii Service and Repair, Beverly Endrizal, and Hon/Hawaii Services, Inc. (HHSI) (collectively, Appellants) with respect to the award by the District Court of the First Circuit, 'Ewa Division (the district court)[3] of $6,970.00 in loss-of-use damages and $4,254.74 in attorneys' fees to Fukida. More specifically, the supreme court instructed that we address Appellants' argument that the district court's award of loss-of-use damages to Fukida was erroneous because the award: (1) was not supported by substantial evidence insofar as (a) Fukida did not establish with sufficient definiteness the amount of his damages, and (b) the district court failed to expressly set forth the measure employed to calculate "loss-of-use" damages; (2) was excessive; and (3) was subject to mitigation. Additionally, the supreme court directed us to address Appellants' ar-

gument that the district court erred in awarding Fukida $4,254.74 in attorneys' fees because said amount exceeded the twenty-five percent cap authorized by Hawai'i Revised Statutes (HRS) § 607–14 (Supp.2000).

Based on our review of the record and the applicable case law, we conclude that the district court's award of loss-of-use damages to Fukida was excessive and, accordingly, we vacate the award and remand this case to the district court for further proceedings consistent with this opinion. We affirm the award of attorneys' fees to Fukida.

## DISCUSSION

### A. *Loss of Use Damages*

#### 1.

■ "Ownership of an item of property carries with it the right to use or to control the use of it." 22 Am.Jur.2d *Damages* § 443, at 525 (1988). Therefore, when property that has been wrongfully detained is ordered returned to its owner, "damages will be given not only for the depreciation in value of the property during the wrongful detention, but also for the loss of its use during that period." C. McCormick, *Damages* § 125, at 478 (1935). This court has previously stated that

> [t]here are several mutually exclusive means of measuring damages for loss of use. They are: "(1) the rental value or the amount that could have been realized by renting out the property; (2) the reasonable cost of renting a substitute; or (3) the ordinary profits that could have been made from the use of the property."

*United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 84 Hawai'i 86, 97, 929 P.2d 99,

1. The Hawai'i Supreme Court (the supreme court) affirmed "part A.2 of the "Discussion" section of [our] opinion, which held that [Defendant–Appellant Beverly Endrizal (Endrizal)], insofar as she was acting solely as the general manager and employee of [Defendant–Appellant Hon/Hawaii Services, Inc. (HHSI)] in her dealings with [Plaintiff–Appellee Jerry Fukida (Fukida)], was not jointly and severally liable to Fukida with [HHSI and Defendant–Appellant Hon/Hawaii Service and Repair (HHSR)]." *Fukida v. Hon/Hawaii Service and Repair*, slip op. (No. 22514, June 12, 2001) at 5.

2. The supreme court vacated the following parts of the "Discussion" section of our opinion:

[P]arts A.1 (holding that Fukida could not maintain a claim for relief in replevin [for the return of his 1986 Honda Civic automobile (Civic)] without tendering payment for repair services and materials), A.3 (holding that Fukida was not entitled to damages for "loss of use"), B (holding that the point of error raised on appeal concerning mitigation of damages need not be addressed), and C (vacating the district court's award of attorney's fees and costs to Fukida in connection with the dismissal of the ... counterclaim [of HHSR, Endrizal, and HHSI (collectively, Appellants).])

3. The Honorable Steven M. Nakashima presided over the District Court of the First Circuit, 'Ewa Division (the district court).

110 (App.1996) (quoting 4 J. Nates et al., *Damages in Tort Actions* § 37.13[1] at 73–74 (1994)). Additionally, it has been held, and we agree, that damages for loss of use of property should not exceed the value of the property. *Anderson v. Rexroad,* 180 Kan. 505, 306 P.2d 137 (1957). As noted in 66 Am.Jur.2d *Replevin* § 122, at 910 (1973):

> In determining the value of the use [of a chattel in a replevin action], care should be taken not to permit the fixing of an amount out of all proportion to the value of the thing itself; otherwise, the result is not compensation for use, but punishment for a wrong, in a case where exemplary damages, as such, would not be allowed. So, where damages allowed for the detention of property for less than a year were more than twice the value of the property, it was held that the damages were grossly excessive.

(Footnote omitted.)

### 2.

Applying the foregoing principles to this case, we observe initially that the record contains absolutely no evidence of the rental value that Fukida could have realized from renting out his 1986 Honda Civic automobile (Civic), the subject of the underlying replevin action. Additionally, no evidence was presented of any ordinary profits that Fukida could have made from the use of his Civic. We turn our attention, therefore, to whether Fukida presented substantial evidence of the "reasonable cost of renting a substitute" for the Civic, the second measure of loss-of-use damages.

Fukida's first witness regarding damages was Rudolph L. Villamil (Villamil), "a certified professional car salesperson" employed "with Budget Car Sales, retail," who stated that he had been "involved in retail auto sales" in the State of Hawai'i for the past twenty-two years, eighteen of which were in management. Fukida's counsel explained that Villamil was "here to establish the value of the Civic as of the date of seizure." [4] Over Appellants' objection that Villamil was not a used-car appraiser, had never seen or driven

---

**4.** The district court asked Fukida's counsel how the valuation of Fukida's Civic was relevant to this case, and the following colloquy transpired:

[FUKIDA'S COUNSEL]: Your Honor, the complaint states claims for conversion and (inaudible). Under both claims the value of the property at the time it was seized is relevant for purposes of damages if it turns out that the seizure was wrongful. But, what Mr. [Rudolph L.] Villamil [(Villamil)] is here to establish is the value of the car at the time [Appellants] put on their lien and refused to return the car to—to [Fukida].

THE COURT: Well, let's ... look at it this way. If I find in favor of [Fukida], all right, then—and say—and, you know, I guess your argument is that there was not either they weren't properly licensed or they didn't give the written estimate prior to the work being done which was supposed to be done, and—and—I mean, there's a number of different reasons, I guess, why you're saying that [Fukida] should not even be responsible to pay the bill before he gets his car back.

[FUKIDA'S COUNSEL]: That's correct.

THE COURT: Okay. Whatever the reasons may be. If I find in [Fukida's] favor, he gets his car back, then where does the valuation come in in terms of damages?

[FUKIDA'S COUNSEL]: Actually, Judge, it's an option. We have ... pled in the alternative. So, we can either ask for the car back or we can ask for the conversion value. So, the statute, sixty—Chapter 654-7 allows this [c]ourt to either return the car or to give him the value of the car at the time it was seized.

THE COURT: Well, one of the things—... let me tell you on this, unless there's some real good reason why [Fukida] should not get his car back, if—I mean, if he wins, you know, I—I would give him the car back as opposed to, you know, the money. I mean, it's—it's the car. And, he can decide what he wants to do with the car after that. And, so, if there is a—you know, so, if—if that were the case, then is—is valuation necessary?

[FUKIDA'S COUNSEL]: Yes, it is, Judge. Because even if under the statute, Chapter 654, even if you give the car back after the [c]ourt has ruled, the statute allows [Fukida] to come back for a supplemental judgment. Because if in the period of the seizure, the property—the value of that property has further deteriorated, let's say they have kept it outside, the upholstery is torn, the paint has peeled, the tires have been popped, he is allowed under statute to come back into court to—to ask the [c]ourt to assess a supplemental judgment and award damages based on the deterioration of the car while it has been stored.

THE COURT: Okay. But, at this point, [Villamil] would not know anything about that.

[FUKIDA'S COUNSEL]: No. But, he would be able to establish the value and we would not have to bring him back to establish value as of the time of the seizure. And, we can then go from that valuation amount and take a deduction.

Fukida's Civic, and was not qualified to give expert testimony as to the value of Fukida's Civic, the district court allowed Villamil to testify, stating that Villamil's testimony "will go more ... towards the ... credibility, towards the worth of the testimony at this point." Although the district court agreed that Villamil was not qualified to testify as an expert, the court nevertheless allowed his testimony, finding that Villamil was

someone that's been in the business a long time, has used the Kelly [sic] Book—Blue Book, and has done appraisals and estimates as far as value, and that—to that extent, you know, he can certainly—is—is qualified as someone who can read the Blue Book and let us know what it means and how it applies to this particular car and the knowledge that he has about the car.

Villamil then testified that in his career in car sales, he relied on the *Kelley Blue Book* that covered the Western states, including Hawaiʻi, for purposes of valuing a used car for trade-in and purchase purposes. Additionally, if a car was "more than five years old," Villamil referred to "the older Kelly [sic] Blue Book" to value the car. Referring to the "September to December, 1996, Western Edition, Official Guide for Older Cars" that he had brought to court, Villamil testified that the *Kelley Blue Book* retail value of a 1986 Honda Civic, two-door hatchback in good condition (no dents) with power steering, air conditioning, stereo, automatic transmission, a cassette player, and a body with good paint was approximately $4,900.00. Villamil admitted on cross-examination, however, that he had never seen Fukida's Civic, that the *Blue Book* is merely a guide, and that a particular car, depending on its condition, may be appraised at a price lower than the lowest *Blue Book* value for that type of car. When asked why the newspaper want-

ads for 1986 Civics with similar add-ons as Fukida's Civic were "only asking something like eighteen hundred dollars ($1800.00)[,]" Villamil testified:

[T]hat's the market place. You can buy a car for eighteen hundred dollars. You can buy the same car, condition notwithstanding, for five thousand dollars.... It's the market place, Counsel.

Villamil also stated that he would not make an offer to buy a car "sight unseen."

On redirect examination, Fukida's counsel asked Villamil whether he had had occasion to rent cars between June 1996 and the date of trial. When Villamil answered affirmatively, Fukida's counsel asked Villamil, "How many times?" Villamil then answered: "Well, I've taken several trips to the neighbor islands. Subcompact brings anywhere from $30.00 (thirty dollars) to $80.00 (eighty dollars)." Appellants immediately objected to the relevance of such testimony, and Fukida's counsel argued that the testimony was relevant to establish Fukida's loss-of-use damages. The district court held, however, that Villamil would not be allowed to testify as to the rental value of a particular rented car on a particular day, saying, "I don't think that gets us anywhere."

The next witness to testify was Fukida. Fukida stated that the detention of his Civic was "really a hassle[.]" He explained that there were four people in his family and they had three cars. One of his children attended college in Hawaiʻi, and he and his wife had to transport that child to different places because of the lack of a car for that child to drive. During the holidays, when his other child returned from college on the mainland, Fukida had to "transport[ ] [the] kids to work." Asked why he did not rent a car or put up a bond pursuant to HRS § 654-2,[5]

5. Hawaiʻi Revised Statutes § 654-2 (1993) provides:

**Bond.** When the plaintiff desires the immediate delivery of the property, the plaintiff shall execute a bond to the defendant in possession of the property, and to all persons having an interest in the property, of such amount and with such sureties as are approved by the court, conditioned that the plaintiff will prosecute the plaintiff's action to judgment without

delay, and deliver the property to the defendant in possession or any other person, if such delivery is adjudged, and pay all costs and damages that may be adjudged against the plaintiff. Upon the filing of the verified complaint or affidavit with the bond and a motion for immediate consideration of the matter, the court shall forthwith inquire into the matter, ex parte or otherwise, as in its discretion it determines. If thereupon the court finds that

Fukida stated that he had believed this litigation would be concluded shortly, his counsel had advised him to mitigate his damages by not renting a car, and he thought it was unfair to be required to put up a bond to regain his own wrongfully detained car.

Fukida further testified that from the time that the lien was placed on his Civic until the date of trial, he had rented a car only briefly in August or September of 1996 while he was visiting the island of Hawai'i. At that time, he rented a subcompact Ford Escort at the discounted kama'āina[6] rate of $32.00 per day.

Following the presentation of evidence and the submission of written briefs by the parties, the district court found and concluded, with respect to the issue of Fukida's claimed loss-of-use damages, partly as follows:

### FINDINGS OF FACT

. . . .

17. Based on the limited evidence presented, including but not limited to the testimony of [Villamil], and the fact that [HHSI] was charging $20.00 a day as storage charges for the storage of the [Civic], the [c]ourt finds that the sum of $10.00 per day is a reasonable amount for any loss of use that [Fukida] suffered as a result of the retention of the [Civic] by [Appellants].

. . . .

Accordingly, it is ORDERED[,] ADJUDGED AND DECREED that [Fukida] is awarded the return of his [Civic] under his claim of replevin. [Fukida] is also awarded damages consisting of the loss of use of his [Civic] from June 2, 1996 to the date that his [Civic] is returned to him, and that loss of use shall be computed at a rate of $10.00 per day.

### 3.

Appellants argue that the district court's award to Fukida of loss-of-use damages was not supported by substantial evidence be-

cause Fukida chose not to rent a substitute car during the period that his Civic was being detained. We disagree.

■ This court has recognized that when a vehicle is totally destroyed due to the negligence of a defendant, the vehicle's owner may recover damages for loss of use of the vehicle for "a period of time reasonably necessary for securing a replacement." *United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 84 Hawai'i at 97, 929 P.2d at 110. Moreover, recovery for loss-of-use damages in such situations should not be precluded just because the owner of the vehicle could not afford to purchase a replacement or rent a substitute vehicle. *Id.* "The rationale supporting this proposition is that regardless of whether the plaintiff furnishes the funds to hire a substitute vehicle, he or she still suffers an injury while deprived of the vehicle and should be awarded damages for the inconvenience." *Id.* The New Mexico Supreme Court observed in this regard that

[t]he purpose of awarding loss-of-use damages is to provide reasonable compensation for inconvenience or monetary loss suffered during the time required for repair of damaged property. If an individual avoids the inconvenience by actually renting substitute property then the measure of damages is the actual cost of the substitute. . . . [I]f the individual cannot avoid the inconvenience, for financial reasons or otherwise, that person still may recover reasonable compensation.

*Cress v. Scott*, 117 N.M. 3, 868 P.2d 648, 651 (1994). *See also Tri–State Motor Transit Co. v. Navajo Freight Lines, Inc.*, 528 S.W.2d 475 (Mo.App.1975) (holding that plaintiff's loss-of-use damages were proper even where plaintiff did not rent a substitute and only showed the customary charge for use of a similar trailer in the trucking industry); C. McCormick, *Damages* § 124, at 474 (1935) (stating that it is untenable to deny recovery for loss of use when a substitute is not actually employed); 22 Am.Jur.2d *Damages* § 447, at 529 (stating that it is "usually rec-

---

a prima facie claim for relief has been established, it shall issue an order ... to take the property therein described and deliver the same to the plaintiff.

6. The word "kama'āina" means "[n]ative-born, one born in a place, host[.]" M. Pukui and S. Elbert, *Hawaiian Dictionary* at 124 (rev. ed.1986).

ognized that recovery for loss of use based on customary rental charges is allowable even though a substitute is not rented").

■ Thus, even though Fukida did not rent a substitute vehicle, he should not be precluded from obtaining loss-of-use damages. Moreover, in light of Fukida's testimony that the lowest rate at which he had recently been able to rent a subcompact car was $32.00 per day, we cannot conclude that the district court's determination that Fukida suffered loss-of-use damages of $10.00 for each day that his Civic was detained was clearly erroneous. The district court's award, amounting to less than one-third of the $32.00 daily rental amount for a subcompact car, was not unreasonable or unsupported by the evidence.

### 4.

■ It is well-settled in Hawai'i that "[i]n contract or in tort, the plaintiff has a duty to make every reasonable effort to mitigate his [or her] damages." *Malani v. Clapp*, 56 Haw. 507, 517, 542 P.2d 1265, 1271 (1975). It is also established that the burden "is upon the defendant to prove that mitigation is possible, and that the injured party has failed to take reasonable steps to mitigate his [or her] damages." *Id.*

■ Appellants argue that it was possible for Fukida to mitigate his loss-of-use damages by executing a bond pursuant to HRS § 654–2 to acquire immediate possession of his Civic. It was Appellants' burden, however, to prove that such mitigation was possible. Based on our review of the record, we conclude that Appellants failed to satisfy their burden.

We note, first of all, that there is no indication in the record that Fukida would have been able to acquire such a bond and what the cost of such a bond would be. Second,

the supreme court has stated that loss-of-use damages should not be precluded because of a vehicle owner's financial inability to hire a substitute vehicle. In light of this holding, we cannot conclude that Fukida's failure to purchase a bond to recover his Civic pending this litigation constitutes a failure to mitigate damages.

### 5.

■ As discussed previously, damages for loss of use of property should not exceed the value of the property. Villamil testified that the *Kelley Blue Book* retail value for a 1986 Honda Civic automobile with similar features as Fukida's Civic would approximate $4,900.00, an amount more than $2,000.00 less than the total loss-of-use damages awarded to Fukida by the district court. Villamil further admitted that he had never seen or driven Fukida's Civic, the *Blue Book* value was just a guide, and Fukida's Civic might be appraised, depending on its condition, at less than the *Kelley Blue Book* value. On cross-examination, Villamil also admitted that comparable Civics were being sold on the marketplace for $1,800.00.

The district court did not enter any finding as to the value of Fukida's Civic at the time it was placed under lien for nonpayment by Fukida of the costs to repair the Civic's transmission. Since the award of loss-of-use damages cannot exceed the value of Fukida's Civic at the time the lien was placed on the Civic, the district court must determine the Civic's value on remand.[7]

### B. *Attorneys' Fees and Costs*

■ Appellants contend that the district court's award of $4,254.74 in attorneys' fees to Fukida, pursuant to HRS § 607–14 for prevailing on Appellants' counterclaim, ex-

7. At the trial below, Endrizal argued that any valuation of Fukida's Civic should be determined as of May 2, 1996, when the Civic was not driveable because its transmission was not working. In its June 12, 2001 "Order Granting [Fukida's] Application for Writ of Certiorari, Affirming in Part, Vacating in Part, and Remanding the Decision of the Intermediate Court of Appeals[,]" however, the supreme court seems to have concluded that Appellants, by failing to challenge the district court's determination that "Fukida was entitled to replevin of his vehicle" and "Fukida was not required to tender payment for the rebuilt transmission or the cost of installing it" has waived these issues. Accordingly, on remand, the value of Fukida's Civic must be determined as of the date the lien was placed on the Civic for Fukida's failure to pay for the costs of installing a rebuilt transmission in it.

ceeded the allowable statutory limit under that section. We disagree.

HRS § 607–14 (1993) reads, in pertinent part:

> **Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable.... The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.[8]
>
> ....
>
> *The above fees provided for by this section shall be assessed* on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and *upon the amount sued for if the defendant obtains judgment.*

(Emphases added.)

Since Fukida prevailed on the counterclaim as a counterclaim defendant, the amount of attorneys' fees to which he is entitled under HRS § 607–14 is capped at twenty-five percent of the amount Appellants sued for in their counterclaim. The dispositive issue, therefore, is the amount Appellants sought in their counterclaim.

A review of the record reveals that the counterclaim requested damages in the amount of $2,478.95 for "[m]oney due and owed[,]" $2,260.00 for "[s]torage fees[,]" and "[a]dditional storage fees of $20.00 per day until the bill is paid in full." In entering its final judgment on April 5, 1999, the district court awarded Fukida $4,254.74 in attorneys' fees. According to the Judgment, attorneys' fees were calculated by taking twenty-five percent of $2,478.95, the amount the counterclaim stated that Fukida owed, and adding twenty-five percent of $14,540.00, the amount

of storage fees accumulated between May 2, 1996 to April 29, 1998. In concluding that the amount of attorneys' fees exceeded the twenty-five percent cap, Appellants argue that their counterclaim for "[a]dditional storage fees of $20.00 per day *until the bill is paid in full*" (italics in original) should not be taken into account when determining the total amount of damages for purposes of calculating attorneys' fees under HRS § 607–14 because the additional storage fees could not be determined from the face of the counterclaim. Since the counterclaim clearly sued for the amount of additional storage fees to be incurred, Appellants' argument is meritless.

## CONCLUSION

In summary, we affirm the district court's award of attorneys' fees to Fukida. However, we vacate the district court's award of loss-of-use damages to Fukida and remand this case to the district court, with instructions that it: (1) determine the value of Fukida's Civic at the time it was placed under lien; and (2) amend the April 5, 1999 Judgment in Fukida's favor to award Fukida loss-of-use damages that are capped by the value of Fukida's Civic at the time it was placed under lien.

---

8. The supreme court has defined assumpsit as "a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *Shanghai Inv. Co. v. Alteka Co.,* 92 Hawai'i 482, 501, 993 P.2d 516, 535 (2000) (internal quotation marks omitted).