33 P.3d 204

Jerry FUKIDA, Plaintiff–
Appellee–Petitioner,

v.

HON/HAWAII SERVICE AND REPAIR,
Beverly Endrizal, Hon/Hawaii Services,
Inc., a Hawai'i Corporation, John Does
1–10, Doe Corporations 2–10, Doe Part-
nerships 1–10, and Doe Governmental
Entities 1–10, Defendants–Appellants–
Respondents.

No. 22514.

Supreme Court of Hawai'i.

Sept. 21, 2001.

Matthew K. Chung, for the plaintiff-appel-
lee-petitioner, Jerry Fukida, on the writ.

MOON, C.J., LEVINSON, NAKAYAMA,
and RAMIL JJ., and Circuit Court Judge
HIRAI, in Place of ACOBA, J., Recused.

Opinion of the Court by LEVINSON, J.

We granted the plaintiff-appellee-petitioner Jerry Fukida's application for a writ of certiorari, which urges this court to review the published opinion of the Intermediate Court of Appeals (ICA) in *Fukida v. Hou/Hawaii Service and Repair*, 97 Haw. 47, 33 P.3d 543 (Haw.Ct.App.2001) [hereinafter, the "ICA's opinion"].[1] The ICA's opinion vacated in part and affirmed in part the amended judgment of the district court of the first circuit, the Honorable Steven M. Nakashima presiding, in favor of Fukida and against the defendants-appellants-respondents Hon/Hawaii Service and Repair, Beverly Endrizal, and Hon/Hawaii Services, Inc., a Hawai'i corporation [hereinafter, collectively the "defendants"]. This is the second application for a writ of certiorari filed by Fukida in this matter. Pursuant to our order granting the application for a writ of certiorari, and affirming in part, vacating in part, and remanding the decision of the ICA, filed on June 12, 2001, we granted Fukida's first petition, vacated in part the ICA's original memorandum opinion in this matter, *Fukida v. Hou/Hawaii Service and Repair*, 95 Hawaii 438, 23 P.3d 773, (Haw.Ct.App. 2001) (mem.op.) [hereinafter, the "ICA's memorandum opinion"], and remanded this matter to the ICA. In his current petition, Fukida maintains that, on remand, the ICA erred in holding that an award of "loss of use" damages cannot, as a matter of law, exceed the value of his vehicle, the use of which the district court determined that he was deprived for a period in excess of two years—*i.e.*, between June 2, 1996, the day on which a repair shop unlawfully imposed a lien upon Fukida's vehicle, and August 29, 1998, the day on which the repair shop returned the vehicle to Fukida. Because the issue that Fukida presents appears to be one of first impression in this jurisdiction and, furthermore, because we disagree with the ICA's analysis and holding, we granted Fukida's second application.

In light of our discussion *infra* in section III, we reverse the ICA's opinion in part and remand this case to the district court for entry of a second amended judgment consistent with the appellate decisions generated in this matter, *see infra* at 15–16.

## I. BACKGROUND

In May 1996, Fukida sought to have his vehicle repaired by an automotive repair shop operated by the defendants. According to Fukida, after an employee of the shop informed him that his vehicle did not pass the safety check because of "transmission problems," he authorized the shop to install a rebuilt transmission, which he was told would cost approximately $2,100 to $2,250. However, at the time he authorized the work, he informed the employee (1) that he wanted, prior to installation of the transmission, to review the receipt for the rebuilt transmission in order to ensure that a rebuilt transmission, rather than a used one, was actually being installed in his vehicle and (2) that he wished to be advised as to when they were "ready to go" so that he could inspect the transmission to be installed.

Thereafter, an employee of the shop informed Fukida that his vehicle was ready to be picked up. When he arrived at the shop, he was further informed that the total amount due for the installation of the rebuilt transmission was $2,478.95; Fukida refused to pay the bill because the shop had not contacted him prior to installing the transmission as he had requested. The repair shop then informed Fukida that it would retain his vehicle until he paid for the repair work and, subsequently, began billing Fukida for the amount it believed was due for the installation, as well as for accrued storage fees calculated at $20.00 per day.

Fukida subsequently filed a complaint, in which he sought the return of his vehicle, special damages for the cost of renting an automobile while the repair shop retained his vehicle, and attorney's fees and costs. The defendants filed a counterclaim against Fukida, seeking the cost of repairing the vehicle in the amount of $2,478.96, as well as storage fees in the amount of $2,260.00 (calculated at

---

1. The Honorable Corinne K.A. Watanabe, John S.W. Lim, and Daniel R. Foley considered Fukida's appeal in this matter; Acting Chief Judge Watanabe authored the ICA's opinion.

$20.00 per day) and any additional storage fees that accrued until Fukida paid for the repair work. In relevant part, the district court, after conducting a bench trial, concluded that the lien imposed by the shop upon Fukida's vehicle was unlawful. One basis for the district court's conclusion was that, insofar as the shop had not complied with Fukida's requests upon which his authorization for the installation of a rebuilt transmission was predicated, the shop could not, pursuant to Hawai'i Revised Statutes (HRS) § 507–18 (1993),[2] lawfully impose a lien upon the vehicle.

Consequently, the district court dismissed the defendants' counterclaim, ruled that the installed transmission must remain in the vehicle, and ordered the defendants to return Fukida's vehicle to him. The district court also awarded Fukida "loss of use" damages for the period of time during which the shop had wrongfully retained possession of his vehicle, to wit, for the period between June 2, 1996 and August 29, 1998, calculated at $10.00 per day, in the total amount of $6,970.00.[3] Lastly, insofar as the defendants' counterclaim was in the nature of assumpsit and Fukida was the prevailing party with

respect to the counterclaim, the district court awarded him costs in defending against the defendants' counterclaim and attorney's fees in an amount up to twenty-five percent of the sum sought by the defendants, which is the statutory cap set forth in HRS § 607–14 (1993 & Supp.2000), and which was calculated to be $4,254.74.

The defendants appealed and, in its memorandum opinion, the ICA, addressing an alternative basis for the district court's conclusion that the lien was unlawful,[4] vacated the district court's judgment in favor of Fukida. In this regard, it is sufficient to note that the ICA believed that Fukida could not maintain his replevin action against the defendants because, in its view, the lien was lawful; thus, the ICA held that "replevin was not available to Fukida to recover [his vehicle], unless he first paid for the reasonable value of the repair services performed." As a consequence of this holding, the ICA further held that Fukida was not entitled to "loss of use" damages, and, "[i]n light of [its] disposition of this appeal," held that Fukida was also not entitled to attorney's fees and costs.[5] The ICA did not address the district court's

2. HRS § 507–18 provides in relevant part:

A person who makes, alters, or repairs any article of personal property at the request of the owner of the property, shall have a lien on the property for the reasonable charges for the work done and materials furnished, excluding storage charges, and may retain possession of the property until the charges are paid[.]

3. The district court's finding of fact (FOF) No. 17 states in relevant part:

Based on the limited evidence presented, ... the Court finds that the sum of $10.00 per day is a reasonable amount for any loss of use that [Fukida] suffered as a result of the retention of the vehicle by the [d]efendants.

In its amended judgment, the district court accepted the stipulation of the parties that the defendants returned the vehicle to Fukida on April 29, 1998.

4. As an alternative basis for its determination that the lien was unlawful, the district court found that because neither Endrizal nor Hon/Hawai'i Service and Repair were registered, as required by statute, to undertake motor vehicle repair work, neither could lawfully impose a lien pursuant to HRS § 507–18, see supra note 2. Insofar as Fukida was unaware of the existence of Hon/Hawai'i Services, Inc., and, in any event, did not expressly contract with that entity, the

district court further found that it also could not invoke HRS § 507–18 to justify the defendants' imposition of a lien upon the vehicle. Consequently, the district court concluded that none of the defendants were entitled to the benefit of a lien on Fukida's vehicle and, thus, were not entitled to retain possession of it pending payment for the installed rebuilt transmission.

5. In its memorandum opinion, the ICA further observed that

[e]ven if this were a proper replevin action, which we do not believe it was, we conclude that the district court erred in holding that Fukida was entitled to the return of his [vehicle] with the newly installed transmission without having to pay [the defendants] for the reasonable cost of the transmission and the labor to install [it]. It follows that Fukida was not entitled to loss of use damages.

Nonetheless, because "no appeal was taken from that part of the judgment that ... allowed Fukida the replevin of his [vehicle] without paying for the installed transmission," the ICA affirmed the district court's judgment awarding Fukida the return of the vehicle without having to pay for the repair work. As a final matter, we note that the ICA also held that district court erred in ruling that Endrizal, in her personal capacity, was jointly and severally liable to Fukida.

conclusion that, in any event, Fukida could maintain his replevin action because the lien was unlawful due to the defendants' failure to abide by the conditions of his authorization for the repairs and, thus, Fukida had not "requested," for purposes of HRS § 507–18, *see supra* note 2, that the shop install the rebuilt transmission. Absent such a request, the district court was of the view that the shop had no statutory right to retain possession of Fukida's vehicle.

Pursuant to an order granting Fukida's application for a writ of certiorari, we affirmed in part and vacated in part the ICA's memorandum opinion. We held in relevant part that, given the district court's determination that Fukida had not authorized the repairs because the defendants had failed to comply with the express requests upon which Fukida had conditioned his authorization of the repairs, the ICA erroneously ruled that Fukida could not maintain a replevin action against the defendants. That being the case, we vacated the ICA's memorandum opinion to the extent that it held otherwise and, furthermore, to the extent that it held that Fukida was not entitled to "loss of use" damages.[6] Accordingly, we remanded the matter to the ICA in order for it to consider the points of error that the defendants had raised on appeal with respect to the district court's judgment awarding Fukida "loss of use" damages. In this regard, we noted that the defendants' points of error were limited to whether the "loss of use" damages award (1) was unsupported by the evidence to the extent that (a) Fukida may not have established with sufficient definiteness the amount of damages and (b) the district court may have failed expressly to set forth the measure by which it calculated Fukida's "loss of use" damages, (2) was excessive, and (3) was subject to mitigation.

On remand, the ICA held that the district court's award of "loss of use" damages was excessive; consequently, it vacated the district court's award of "loss of use" damages

and remanded the matter to the district court for a determination of the value of Fukida's vehicle at the time the defendants unlawfully imposed a lien upon the vehicle and an amendment of the district court's judgment in Fukida's favor so as to award him "loss of use" damages "that are capped by the value of [his vehicle] at the time it was placed under lien."[7] ICA's opinion at 48–52, 53, 33 P.3d at 544–48, 549. Fukida, once again, timely filed an application for a writ of certiorari, which we once again granted.

## II. *STANDARDS OF REVIEW*

### A. *Certiorari*

Appeals from the ICA are governed by HRS § 602–59(b) (1993), which prescribes that an

> application for writ of certiorari shall tersely state its grounds which must include (1) grave errors of law or of facts, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal.

*In re Jane Doe, Born on June 20, 1995,* 95 Hawai'i 183, 189, 20 P.3d 616, 626 (2001).

## III. *DISCUSSION*

After observing that "loss of use" damages may be measured, *inter alia*, by "the reasonable cost of renting a substitute," the ICA held that "damages for loss of use of property should not exceed the value of the property." ICA's opinion at 4 (citing *Anderson v. Rexroad,* 180 Kan. 505, 306 P.2d 137 (1957)). The only analysis contained in the ICA's opinion on this point was the following:

> As noted in 66 Am.Jur.2d *Replevin* § 122, at 910 (1973):
>
> In determining the value of the use [of a chattel in a replevin action], care should be taken not to permit the fixing of an amount

---

**6.** We further held that the ICA erred in holding that Fukida was not entitled to attorney's fees and costs, but we affirmed the ICA's holding that Endrizal was not personally liable, jointly and severally with the repair shop, to Fukida.

**7.** On remand, the ICA affirmed the district court's award of attorney's fees and costs to Fukida. ICA's opinion at 48, 52–53, 33 P.3d at 544, 548–49.

out of all proportion to the value of the thing itself; otherwise, the result is not compensation for use, but punishment for a wrong, in a case where exemplary damages, as such, would not be allowed. So, where damages allowed for the detention of property for less than a year were more than twice the value of the property, it was held that the damages were grossly excessive.

ICA's opinion at 49, 33 P.3d at 545 (brackets in original).

▌ After parsing the evidence adduced in the district court regarding Fukida's "loss of use" damages, *see* ICA's opinion at 48–51, 33 P.3d at 544–47, the ICA correctly held that Fukida was not required to establish that he actually rented a replacement vehicle during the time his own vehicle was retained by the defendants, *see id.* at 51–52, 33 P.3d at 547–48. Consequently, in connection with the defendants' argument that the district court's award of "loss of use" damages was unsupported by the evidence because Fukida had not established with sufficient definiteness that he had incurred actual rental damages, the ICA held that, in light of Fukida's testimony that a comparable vehicle rented at approximately $32.00 per day, the district court's determination that he should be compensated at the rate of $10.00 per day in "loss of use" damages was neither unreasonable nor unsupported by the evidence; as such, the ICA held that the district court's FOF No. 17, *see supra* note 3, was not clearly erroneous.[8] ICA's opinion at 51–52, 33 P.3d at 547–48. We affirm this aspect of the ICA's opinion. *See, e.g., Cress v. Scott,* 117 N.M. 3, 868 P.2d 648, 650–51 (1994) (holding, *inter alia,* that "loss-of-use damages may be measured by the reasonable rental value of a substitute vehicle, even in

the absence of actual rental" and collecting cases in accord).

▌ Nonetheless, the ICA further held as follows:

As discussed previously, damages for loss of use of property should not exceed the value of the property. [Rudolph L.] Villamil[9] testified that the *Kelley Blue Book* retail value for a 1986 Honda Civic with similar features as Fukida's Civic would approximate $4,900.00, an amount more than $2,000.00 less than the total loss-of-use damages awarded to Fukida by the district court. Villamil further admitted that he had never seen or driven Fukida's Civic, the *Blue Book* value was just a guide, and Fukida's Civic might be appraised, depending on its condition, at less than the *Kelley Blue Book* value. On cross-examination, Villamil also admitted that comparable Civics were being sold on the marketplace for $1,800.00.

The district court did not enter any finding as to the value of Fukida's Civic at the time it was placed under lien for nonpayment by Fukida of the costs to repair the Civic's transmission. Since the award of loss-of-use damages cannot exceed the value of Fukida's Civic at the time the lien was placed on the Civic, the district court must determine the Civic's value on remand.

ICA's opinion at 52–53, 33 P.3d at 548–49 (footnote omitted).

Our own research reflects that the rule that the ICA adopted, to wit, that "loss of use" damages cannot exceed the value of the property the use of which the plaintiff was deprived is somewhat antiquated. In *Anderson,* a 1957 decision of the Kansas Supreme Court and the sole authority—other than an article appearing in American Jurisprudence 2d (1973)—upon which the ICA relied, the Kansas Supreme Court indeed observed that,

8. As to the defendants' argument that Fukida had failed to mitigate his "loss of use" damages by opting not to post a bond to recover his vehicle, the ICA held the argument to be without merit. ICA's opinion at 52–53, 33 P.3d at 548–49. We affirm the ICA's opinion in this regard as well.

9. Villamil was a "certified professional car salesperson" employed by "Budget Car Sales," and, over the defendants' objection, was allowed to testify to the value of Fukida's vehicle. ICA's opinion at 49–50, 33 P.3d at 545–46.

[g]enerally speaking, there may be recovery for the loss of use of property ... and, where property is attached to [land] and, such as was plaintiffs' dwelling, ... it is damaged or destroyed, the owner is entitled to damages, which may not exceed the value of the property, for his [or her] loss of use or for loss of rental up to the time when, with ordinary diligence, it could have been restored, whether in fact it was restored or not.

306 P.2d at 144. However, the context of the case is entirely inapposite to the present matter. The plaintiffs in *Anderson* were third-party beneficiaries of a contract entered into between the defendants and the City of Assaria, Kansas, pursuant to which the defendants had agreed to be liable for any damage to homes within the construction area in which the defendants were working. *Id.* at 140. As a result of the defendants' negligence, the plaintiffs' home was completely destroyed by a fire. *Id.* The defendants argued on appeal that the trial court erred (1) in instructing the jury to determine the plaintiffs' "loss of use" damages from the date of the fire through the date of the verdict, in addition to the cost of replacing the home and (2) in allowing the jury to ascertain the monthly rental value of the destroyed property.[10] *Id.* at 144. It was in this context that the observation upon which the ICA relied and that is quoted *supra* was expounded.

Ultimately, the *Anderson* court held that the trial court had not erred in instructing the jury and that there was substantial evidence supporting the jury's determination that the plaintiffs were unable to mitigate their damages, as well as the jury's award fixing the monthly rental value at $50.00. *Id.*

at 144. Because the case did not address the question whether the jury's award of "loss of use" damages was excessive for having exceeded the value of the home, *Anderson* is silent—except for the isolated clause in the passage quoted *supra*—with regard to the specific issue that Fukida raises.

More recent jurisprudence from other jurisdictions reflects an evolution of the "black-letter" principle set forth in the Am.Jur.2d article that the ICA quoted and that the *Anderson* court noted in passing. For example, in *Mondragon v. Austin*, 954 S.W.2d 191 (Tex.Ct.App.1997), the Texas Court of Appeals specifically addressed the argument that "loss of use damages should be limited to the total value of the [plaintiffs'] car as a matter of law." [11] 954 S.W.2d at 195. The *Mondragon* court noted that, "[i]n Texas, a person whose car has been totally destroyed ... may recover only the value of the car, while a person whose car is repairable may also recover the loss of use of the car." *Id.* at 193 (citations omitted). The court agreed with the defendant that the duality of such a rule, "when viewed in conjunction [with] extreme fact situations, appear[s] inequitable," but noted that the distinction—*i.e.*, between total destruction and reparable partial damage—is drawn

because courts assume that a person does not suffer loss of use damages when a car is a total loss. Courts assume that the car can be replaced immediately. In contrast, we assume a partially damaged car, while repairable, cannot be repaired immediately. Consequently, a person whose car is only partially damaged suffers damage in addition to loss in value of the car. The person also suffers loss of *use* of the car, a

**10.** As parsed by the *Anderson* court,

The trial court instructed the jury in effect that it was the duty of the plaintiffs to mitigate their damages for loss of use of the dwelling and personal property, if within their financial means, but if there was reasonable grounds for plaintiffs' failure to do so, then it should award the plaintiffs such damages as would be a reasonable rental from February 2, 1952[, the date the home was destroyed by fire.]

306 P.2d at 144.

**11.** In *Mondragon*, the plaintiff lost the use of his vehicle because the defendant collided with it while "driving drunk and backwards down the

road." 954 S.W.2d at 192. The plaintiff's vehicle was damaged to such an extent that it could not be driven and, because the plaintiff was of limited financial means and had no collision insurance, he remained unable to obtain an estimate for repairing the vehicle for over a year following the accident. *Id.* In the meantime, the plaintiff was obliged to continue making monthly payments on the vehicle, send additional money to his daughter (for whom the vehicle was purchased) for transportation at college, and travel six hundred miles each way to transport her back and forth on holidays. *Id.*

value not necessarily correlative to the value of the *car*.

*Id.* at 195–96 (emphases in original). Believing that the "the assumption made in partial damage cases is more realistic than that made in total destruction cases," the *Mondragon* court declined the defendant's invitation to "equalize the two situations by limiting loss of use damages in partial destruction cases" and, indeed, expressed its view that the "better policy might be to reconsider permitting loss of use damages in total destruction cases." [12] *Id.* at 196.

The Iowa Supreme Court has, in fact, done just that. Acknowledging that the historical rule was that "loss of use" damages were unavailable in cases involving complete destruction, as well as in cases where repair will not return a vehicle to the condition it was in before it was damaged, but were available in cases involving reparable damage, the Iowa Supreme Court revisited the propriety of such a rule and held that it does not, in a great number of instances, permit full compensation to the plaintiff. *See Long v. McAllister*, 319 N.W.2d 256, 258–61 (Iowa 1982).

Loss of use damages will be incurred as readily when a vehicle is totally destroyed or when it cannot be restored by repair to its prior condition as when the vehicle can be restored by repair. Just as loss of use damages are necessary for full compensation when the vehicle can be restored to its prior condition, they are warranted when the vehicle is destroyed or cannot be so restored. No logical basis exists for cutting them off when the total reaches the vehicle's market value before the injury.

. . . .

The fallacy in the market value ceiling upon recovery in a destruction case was pinpointed in *Bartlett v. Garrett*, 130 N.J.Super. 193, 196, 325 A.2d 866, 867 (1974):

When an automobile is damaged through the negligence of another, temporary loss of the use of such vehicle pending repair or replacement is a reasonably foreseeable consequence of the defendant's tortious conduct. Compensation for the temporary loss of use is directed at plaintiff's *economic loss,* the amount of money plaintiff had to pay for rental of a car. This is an injury different in *kind* from *property damage,* the amount of money necessary to repair or replace the damaged vehicle. A plaintiff in a total destruction case deprived of his [or her] reasonable loss-of-use expenses has simply not been made whole. ( [E]mphas[e]s in original[.] )

The same reasoning is applicable in a repair situation. *See Kopischke v. Chicago, St. P., M. & O. Ry.*, 230 Minn. 23, 31–32, 40 N.W.2d 834, 839 (1950).

*Long,* 319 N.W.2d at 259, 260; *see also id.* at 261 (collecting cases permitting "loss of use" damages in complete destruction cases). The foregoing logic loses none of its vitality in the context before us here, where no damage has been done the vehicle, but, nonetheless, Fukida has been deprived of its use for over two years by the tortious conduct of the defendants. *See, e.g., Morfeld v. Bernstrauch,* 216 Neb. 234, 343 N.W.2d 880, 885 (1984) (holding that "[t]he value of the use of a car may exceed the actual value of the car" and observing that, insofar as the plaintiffs' "car has been ordered returned to them, . . . the value of the car is thus not in question, since the plaintiffs have not sought or proven any damages for depreciation").

■ We agree with the Iowa Supreme Court's analysis in *Long.* In our view, permitting a plaintiff to recover "loss of use" damages in any case involving a tortious deprivation of the use of property—which, of course, includes both complete destruction and reparable damage situations—comports with the very purpose of allowing recovery of such damages. As the New Mexico Supreme Court has observed, "the purpose of awarding loss-of-use damages is to provide reasonable compensation for inconvenience or monetary loss suffered during the time required

---

**12.** The *Mondragon* court noted that at least two other Texas courts had affirmed awards "derived from these rules even when the result was to award loss of use damages that exceeded the total value of the chattel that had been only partially damaged." *Id.* at 196 (citations omitted).

for repair of damaged property." *Cress*, 868 P.2d at 651. A person whose vehicle is completely destroyed suffers an indistinguishable inconvenience, during the reasonable period of time necessary to obtain a replacement vehicle, from that borne by a person, whose vehicle is only partially damaged, while he or she awaits the completion of repairs. Fukida, insofar as he was deprived of the use of his vehicle as a result of the defendants' tortious retention of possession of it, has no less suffered a comparable inconvenience. As such, we perceive no plausible rationale for adopting a rule distinguishing between these sundry scenarios, much less a rule such as the ICA has approved, by which the amount of recovery for such inconvenience is arbitrarily capped by the vehicle's value, a factor that bears no relation to the inconvenience that the loss of use of one's vehicle causes. Whether plaintiffs rely upon a 1970 Chevy Nova or the newest Rolls Royce for transportation, both are equally inconvenienced by a loss of use of their respective vehicles, and we see no sound reason for permitting the Rolls Royce owner to recover more in "loss of use" damages for a like period of time than the Chevy Nova owner.

In accord with the foregoing analysis and authority, we hold that, where a person is deprived of the use of his or her property due to the tortious conduct of another, he or she may recover "loss of use" damages. Of course, such damages are, as a general matter, limited to the period of time reasonably necessary to obtain a replacement (if the property is completely destroyed or cannot be returned by repair to its previous condition), to effect repairs (if the property is merely damaged but reparable), or the date upon which the property is returned (if possession of the property is wrongfully retained). *See, e.g., Cress*, 868 P.2d at 651; *Morfeld*, 343 N.W.2d at 885–86 (Boslaugh, J., dissenting in part). The totality of the circumstances should be evaluated to determine the reasonableness of the period of time that the plaintiff claims he or she was deprived of the property, including whether the plaintiff reasonably could have mitigated the damages in some manner; however, the value of the property, in and of itself, is not determinative in assessing "loss of use" damages.

That being the case, we reverse the ICA's opinion to the extent that it held that Fukida's "loss of use" damages may not exceed the value of his vehicle and remanded this matter to the district court to assess the value of the vehicle and cap Fukida's "loss of use" damages at that amount.[13] We affirm the ICA's opinion in all other respects. We remand this case to the district court for entry of a second amended judgment consistent with this opinion. We vacate the district court's amended judgment to the extent that the district court concluded that Endrizal was personally liable, jointly and severally with Hon/Hawaii Services, Inc. and Hon/Hawaii Service and Repair, to Fukida. To the extent that we affirm the ICA's published opinion herein, the district court's judgment is affirmed with regard to its award of attorney's fees and costs to Fukida. Finally, to the extent that we reverse the ICA's determination that "loss of use" damages cannot exceed the value of Fukida's vehicle but affirm its determination that the district court's assessment of $10.00 per day for the period of time that the defendants wrongfully possessed Fukida's vehicle was reasonable, *see supra* at 41–42, 33 P.3d 207–08 & n. 8, the district court's judgment is affirmed as to its award of "loss of use" damages to Fukida.

## IV. *CONCLUSION*

We affirm in part and reverse in part the ICA's opinion and remand this matter to the district court of the first circuit for entry of a

---

**13.** The ICA's holding appears all the more anomalous in light of the fact that, in *United Truck Rental Equipment Leasing, Inc., v. Kleenco Corp.*, 84 Hawai'i 86, 929 P.2d 99 (App.1996), it reviewed the historical development of the rule that "loss of use" damages were unavailable in complete destruction cases and departed from that rule, holding that damages for loss of use may be recovered when a vehicle is totally destroyed or merely partially damaged, subject to the qualification that "recovery ... must be limited to a period of time reasonably necessary for securing a replacement." Our decision today does not affect *United Truck Rental*, inasmuch as the holding and analysis in that case is not inconsistent with the present opinion.

second amended judgment consistent with the foregoing.