

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00174-CV

JAMES BRADLEY MORRISON                                                    APPELLANT

V.

JAMES CAMPBELL                                                              APPELLEE

------------

## FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

----------

## OPINION

----------

In this agreed interlocutory appeal, James Bradley Morrison appeals from the trial court's denial of his motion for summary judgment on the claim for loss of use damages brought against him by James Campbell.[1]  Morrison's vehicle

---

[1]Because this lawsuit was filed before September 1, 2011, the former civil practice and remedies code section 51.014 applies to this case rather than the amended rule; therefore, this appeal was an agreed interlocutory appeal, not a permissive interlocutory appeal requiring this court's order accepting the appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d), (f) (West Supp. 2013); Act of May 24, 2011, 82nd Leg., R.S., ch. 203, §§ 6.01–.02, 2011 Tex. Sess. Law Serv.

struck Campbell's motorcycle in an accident, and the motorcycle was damaged. Morrison argues that loss of use damages are not available to Campbell because his motorcycle was declared a total loss. Because we hold that damages for loss of use are available in total loss cases when the insurer unreasonably delays payment of a claim, we affirm the trial court's denial of the motion for summary judgment.

## Facts and Procedural History

The accident that gave rise to this suit occurred on October 23, 2009. On June 22, 2010, Morrison's insurance carrier (Insurer) sent a letter to Campbell's attorney denying Campbell's claim based on its determination that Campbell was at fault for the accident because of "faulty evasive action & following too closely." The record does not contain any more communications between Insurer and Campbell's attorney in 2010. On January 19, 2011, Insurer sent the attorney a letter offering $100,000.00 to settle Campbell's personal injury claims arising out of the accident. That same month, Insurer sent Campbell a check for that amount.

The next month, Campbell's attorney sent Insurer a letter regarding Campbell's claims for damages to his motorcycle and other personal property. He stated that the damage to the motorcycle "rendered it inoperable. In addition

758, 761 (setting out when the new rule applies); Act of May 25, 2005, 79th Leg., R.S., ch. 1051, §§ 1, 2, 2005 Tex. Gen. Laws 3512, 3512–13; Act of May 11, 2005, 79th Leg., R.S., ch. 97, § 5, 2005 Tex. Gen. Laws 169, 180 (setting out former rule allowing agreed appeals).

2

to the property damage to his motorcycle, [Campbell] has lost the use of his motorcycle from the date of the collision to the present." He asserted that the proper measure of loss of use damages is the reasonable rental value of a substitute vehicle and that "[t]he cost of renting a replacement motorcycle during this time is $125.00 per day."

As for the repair and replacement costs, the attorney stated that he was authorized to accept the amounts listed in the letter "in full settlement of [Cambpell's] property damage claim." He listed the following items and amounts:

$1,664.70:   helmet, leather chaps[,] and pants, *see attached receipt*

$1,095.11:   accessories, *see attached receipt*

$24,605.29:  cost of repair, *see attached receipt*

$61,625.00:  loss of use from October 23, 2009 through February 28, 2011, 493 days x $125.00 per day

**$88,990.10**

The record does not, however, include any receipts that may have been attached to this letter.

On April 20, 2011, Insurer sent Campbell's attorney an offer of $53,125.00 for the motorcycle, clear title, and salvage, plus $1,884.70 for the clothing damaged in the accident. Alternatively, it offered that if Campbell wanted to keep the salvage, Insurer would pay $42,825.00 for the motorcycle.

The attorney responded the next day with a letter accepting the offer of $42,825.00 plus the salvage. He also accepted the offer of $1,884.70 for the clothing items and demanded additional damages for Campbell's damaged GPS

3

system.  He agreed to accept a total of $3,383.70 for the GPS and clothing items. He confirmed his understanding that as to Campbell's loss of use claim, "[Insurer] rejected this claim, [and] that it is not included as part of this settlement."  A check from Insurer dated May 3, 2011 was made out to Campbell in the amount of $46,208.70.

On June 13, 2011, Campbell filed suit against Morrison for loss of use damages.  In response to requests for admissions, Campbell admitted that the motorcycle was a total loss following the collision and that he accepted $42,825.00 as fair compensation for the fair market value of the motorcycle, "excluding [Campbell's] claim for loss of use damages."

Morrison filed a motion for summary judgment on the ground that as a matter of law, loss of use damages are available only for property that is repairable and are not available for property that has been declared a total loss. Campbell responded that the rule relied on by Morrison does not apply when the insurer delays paying a claim.  He attached to his response his own affidavit in which he stated that because of the collision, his motorcycle had been damaged to the point that it could not be driven, that he was financially unable to replace the motorcycle until he had been paid the fair market value, and that Insurer "delayed paying [him] the fair market value of this motorcycle for a period exceeding eighteen months."  He also attached the police report of the accident, Insurer's letter denying the claim, Insurer's January 2011 letter offering to settle the personal injury claim, the February 2011 letter from his attorney demanding

4

damages for the motorcycle and other personal property, the April 2011 offer from Insurer; the April 2011 letter from Campbell's attorney accepting the offer and asking for damages for the GPS, and a copy of the May 2011 check from Insurer.

The trial court denied the summary judgment motion without specifying the basis of the ruling. The trial court approved Morrison's application for an agreed interlocutory appeal on this question of law: "whether [Campbell] can recover loss of use damages where [Campbell's] motorcycle was determined to be a total loss and where [Morrison] (through his insurer) substantially delayed compensating [Campbell] for its fair market value." The court noted that it had denied the summary judgment motion on the merits, and it stated that "if the appellate court determines [Campbell] can recover loss of use damages under these circumstances, the case would likely resolve at mediation. Similarly, if the appellate court determines [Campbell] cannot recover loss of use damages under these circumstances, the case would likely be resolved."

### Standard of Review

We review a summary judgment de novo.[2] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence

---

[2]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

5

contrary to the nonmovant unless reasonable jurors could not.[3]  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[4]  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[5]

We must accept as true the uncontroverted evidence of the nonmovant.[6]  If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.[7]

## Analysis

Morrison argues in one issue that the trial court erred by denying his motion for summary judgment because under the law, loss of use damages are not available to Campbell because his motorcycle was declared a total loss and he was paid the fair market value for it.

*The Rule in Texas*

---

[3]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[4]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[5]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

[6]*Hellman v. Mateo*, 772 S.W.2d 64, 66 (Tex. 1989).

[7]Tex. R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

Texas law distinguishes between property that was damaged to the point of being totally destroyed and damaged property that can be repaired. In a suit for damages for personal property that has been totally destroyed, the proper measure of damages is the fair market value of the property at the time it was destroyed.[8] Texas courts have consistently held that if personal property such as a vehicle is damaged but is *repairable*, the owner may recover the cost of repairs and damages for loss of the use of the vehicle, but if the property is totally *destroyed*, the owner can recover only the market value of the property and not loss of use damages.[9] Campbell argues that the rule against recovering loss of use damages for totally destroyed property is the "the *general* rule," as though

---

[8] *Waples-Platter Co. v. Commercial Standard Ins. Co.*, 156 Tex. 234, 236, 294 S.W.2d 375, 376–77 (1956); *see also Tex. Farm Bureau Mut. Ins. Co. v. Wilde*, 385 S.W.3d 733, 737 (Tex. App.—El Paso 2012, no pet.) (stating that plaintiff whose property is totally destroyed is limited to recovery of market-value damages); *Lee v. Dykes*, 312 S.W.3d 191, 195 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding that the meaning of "reasonable cash market value" is similar to the legal definition of "fair market value"); *Hartford Ins. Co. v. Jiminez*, 814 S.W.2d 551, 552 (Tex. App.—Houston [1st Dist.] 1991, no writ) (stating measure of damages is "reasonable market value").

[9] *Hanna v. Lott*, 888 S.W.2d 132, 139 (Tex. App.—Tyler 1994, no writ*); see also Am. Jet, Inc. v. Leyendecker*, 683 S.W.2d 121, 128 (Tex. App.—San Antonio 1984, no writ); *Pickett v. J. J. Willis Trucking Co.*, 624 S.W.2d 664, 668–69 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Wright v. Gernandt*, 559 S.W.2d 864, 869 (Tex. Civ. App.—Corpus Christi 1977, no writ); *Riddell v. Mays*, 533 S.W.2d 910, 911 (Tex. Civ. App.—Waco 1976, no writ); *Carson v. Bryan*, 532 S.W.2d 711, 713 (Tex. Civ. App.—Amarillo 1976, no writ); *Exp. Ins. Co. v. Herrera*, 426 S.W.2d 895, 901 (Tex. Civ. App.—Corpus Christi 1968); *Cogbill v. Martin*, 308 S.W.2d 269, 271 (Tex. Civ. App.—Waco 1957, no writ); *Kansas City S. Ry. Co. v. Frederick*, 276 S.W.2d 332, 334 (Tex. Civ. App.—Beaumont 1955, writ ref'd n.r.e.).

the law has provided some exceptions. But we have found no case on this issue that declined to follow the rule or that created any exception, even when equity might weigh in favor of one. For example, the law has made no exception for when the owner cannot secure financing and is therefore unable to replace the property.[10] In that case, the law still prohibits the recovery of loss of use damages.

But even long-standing rules should be re-examined periodically to determine whether they retain their validity in light of changed circumstances and standards.[11] We therefore will consider the purpose of the rule and whether the rule continues to serve that purpose.

In Texas, the rule's application has been justified on the basis of two assumptions: (1) that loss of use damages are included in an award of the market value of the property and therefore the rule prevents a double recovery

---

[10] *Hanna*, 888 S.W.2d at 139.

[11] *Wright's Adm'x v. Donnell*, 34 Tex. 291, 306 (1870) ("[W]hen the reason of the rule fails, the rule itself should cease. *Cessante ratione legis, cessat ipsa lex.*"); *see also Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008) ("'[W]e adhere to our precedents for reasons of efficiency, fairness, and legitimacy', and 'when adherence to a judicially-created rule of law no longer furthers these interests, and "the general interest will suffer less by such departure, than from a strict adherence," we should not hesitate to depart from a prior holding.'") (citations omitted); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex. 1983) (considering whether to change rule regarding employer liability in light of "changing social standards and increasing complexities of human relationships in today's society").

for the plaintiff and (2) that when property is totally destroyed, it can be replaced immediately with no loss of use.[12]

The Supreme Court of Texas discussed the rule in *King v. McGuff* in the context of whether the plaintiffs could recover rental value for a house damaged by fire.[13] The fire had caused the house to lose 9/10 of its market value, a level of damage that the court equated with total destruction.[14] The jury awarded the owners compensation for loss of use or rental value of the house while it was being restored, and it also awarded the difference between the reasonable market value of the house just before and just after the fire.[15]

In its analysis, the court noted that Texas case law was "surprisingly meager" on the question of whether a person whose house had been totally destroyed by fire could be awarded both the lost market value of the house and also interest on the market value from the date of the loss to the date of trial.[16] It concluded that there was "no suggestion" in any of the cases it had found that

---

[12]*See Mondragon v. Austin*, 954 S.W.2d 191, 196 (Tex. App.—Austin 1997, pet. denied) (stating that courts assume that no loss of use occurs when a car is a total loss); *Riddell*, 533 S.W.2d at 911 (loss of use damages are included in an award of market value).

[13]149 Tex. 432, 436, 234 S.W.2d 403, 405 (1950).

[14]*Id.* at 404, 406.

[15]*Id.* at 405.

[16]*Id.* at 405–06.

allowing the interest in cases in which the home had been totally destroyed (as opposed to partially destroyed) was improper.[17]

The court then discussed the case of *Lone Star Gas Co. v. Hutton*,[18] stating that other than that case, it knew of no case clearly supporting the proposition that a plaintiff may not recover compensation for loss of use for "a house or building tortiously destroyed in its entirety."[19] It stated that "it seems difficult to say that loss of use may not be compensated when the damage amounts to nine tenths of the value of the house, but will be, if it amounts to, say five tenths or six tenths."[20]

The court stated that in *Lone Star Gas*, the court had held that the plaintiff could not recover for permanent injury to land and also recover additional sums for loss of crops or lost rental value that would have accrued the next year.[21] The court noted, however, that *Lone Star Gas* did not discuss whether the recovery of interest would have been allowed.[22]

---

[17]*Id.* at 406.

[18]58 S.W.2d 19, 20 (Tex. Comm'n App. 1933, holding approved).

[19]*King*, 234 S.W.2d at 406.

[20]*Id.*

[21]*Id.*

[22]*Id.*

The court then recognized that in the case before it, unlike in *Lone Star Gas*, the question was whether loss of use damages could be recovered, not interest.[23] It determined that there was no precedent in Texas on that question.[24] It then made this determination:

> Quite possibly the rule allowing interest intends to treat the latter as a substitute for loss of use pending the trial, though one can imagine cases in which it would seem inadequate. The difference between interest and rental value is not as great as it seems, because damages for lost use should in justice be defined to include a charge against the plaintiff of the equivalent of depreciation during the same period. Influenced considerably by the early Texas decisions previously referred to, we conclude that respondents are entitled to interest at the legal rate on the award [for lost market value] from the date of the fire to the date of judgment of the trial court, and that such interest should have been allowed instead of damages for lost use based on rental value.[25]

Thus, although the court had earlier in the opinion stated that it was "difficult to say" that loss of use damages could be awarded for property partially destroyed but not for property totally destroyed, it nevertheless set out the rule that interest may be recovered as an element of the measure of damages when property is totally destroyed, but loss of use damages may not be.[26]

---

[23]*Id.*

[24]*Id.*

[25]*Id.* at 406–07.

[26]*Id.*; *see also Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 553 (Tex. 1985) (stating that the distinction between interest as damages and interest as interest had been abolished), *abrogated on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998) (modifying the common law such that prejudgment interest begins to accrue on

11

Subsequent Texas cases have noted that the reason that loss of use damages may not be awarded in total destruction cases is "because such damages are included as a part of the award for total loss viz: the difference in the market value immediately before and immediately after the injury."[27] These cases are in line with *Lone Star Gas*, in which the court stated that "[a] recovery for permanent injury [to land] would include also the rental value," and "[t]o permit a recovery of the market and rental value in one case would permit a double recovery for the same damages."[28] Whether the market value includes an award for loss of use or whether it is the interest on the market value that substitutes for loss of use damages,[29] in either case, awarding separate, additional compensation for loss of use damages would result in a double recovery. The rule in Texas, then, is based on the goal of avoiding double recovery for the plaintiff.

---

the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed).

[27]*Riddell*, 533 S.W.2d at 911; *see also ANT, Inc. v. Gibson*, No. 05-95-01450-CV, 1997 WL 198738, at *9 (Tex. App.—Dallas Apr. 24, 1997, writ denied) (not designated for publication) ("Loss of use damages are included as a part of the award for total loss."); *Am. Jet*, 683 S.W.2d at 128.

[28]*Lone Star Gas Co.*, 58 S.W.2d at 21.

[29]*See King*, 234 S.W.2d at 407 (stating that an award of interest from the date of the fire to the date of judgment should have been allowed instead of damages for lost use).

Along that same line of reasoning, Texas courts have also stated that the reason for treating repairable property and destroyed property cases differently is that in the case of total destruction, the owner can and will replace the property immediately and therefore suffers no loss of use.[30] Thus, in Texas, we justify this rule by drawing a distinction between what we assume a person will do if the property is destroyed versus what we assume a person will do if the property can be repaired. If a person's vehicle is totally destroyed, then rather than repairing it, the owner will replace it, and therefore the owner will not be deprived of the use of a vehicle.[31] If, on the other hand, the vehicle must be repaired, the owners will be without the vehicle during the repair time.[32] These assumptions also support the idea that allowing loss of use damages for totally destroyed property would give the property owner compensation in excess of the owner's damages.

When insurance is involved, the situation changes somewhat but, *in theory*, not enough to merit a different rule. An insurer may declare a vehicle to be a "total loss" when it would not be absolutely impossible to repair it, but the damages are so extensive that repair would not be economically feasible.[33] If it

---

[30]*Mondragon*, 954 S.W.2d at 196.

[31]*Id.*

[32]*Id.*

[33]*See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 564 (Tex. App.—Tyler 2007, pet. denied) (stating that "[i]t is commonly understood that 'totaled' [i.e.,

13

is not economically reasonable to pay the cost of repairs, the insurer will declare the vehicle to be a total loss. A totally destroyed vehicle compared to a total loss vehicle is essentially a distinction without a difference—in either case, the owner can replace the vehicle rather than waiting on repairs. And if the owner can afford to replace the vehicle while waiting for payment from the insurer, the owner can replace the vehicle as quickly as the owner can find a vehicle to buy. Because the vehicle will be replaced rather than repaired, the owner theoretically suffers no loss of use.

But when a vehicle is repairable and has not been declared a total loss, the owner must do without the vehicle while repairs are made. Likewise, if the owner does not have the financial resources to replace a totaled vehicle immediately, the owner must wait for payment of the insurance proceeds. The owner thus has some delay in that case, even if the vehicle is a total loss, because the owner must wait for the insurer to pay the claim. But in that case, the waiting stops with the claim's payment, at which point the owner may replace the vehicle. When the vehicle is not totally destroyed and is not a total loss, on the other hand, the owner must continue to wait while the vehicle is repaired. Thus even if the claim is paid immediately, the owner will be without the vehicle

---

total loss] vehicles are those for which repairs would be too costly compared to the value of the vehicle").

14

during the repair period.  The law provides compensation for that inconvenience in the form of loss of use damages.[34]

*Continued Validity of the Rule*

We have found no Texas tort cases declining to follow the general rule that loss of use damages are not recoverable when property is totally destroyed.  We have found only one court that has suggested that the rule ought not always be strictly applied, and even that court has not yet addressed the question directly.  In *Reinarz v. Griner*, the Austin Court of Appeals held that it was an open question as to whether the Supreme Court would allow recovery for loss of use of totally destroyed property in special circumstances.[35]  Then in *Mondragon v. Austin*, on which Campbell relies, the Austin court took a step further and questioned the continued validity of the rule.[36]

The *Mondragon* court acknowledged the general rule of disallowing loss of use damages for property that is totally destroyed.[37]  But in dicta, the court noted the apparent inequity in the arbitrary distinction between situations in which the

---

[34]*See, e.g.*, *Luna v. N. Star Dodge Sales, Inc.*, 667 S.W.2d 115, 119 (Tex. 1984) (considering the appellant's deceptive trade practices act claim and stating that the appellant had "suffered compensable inconvenience for loss of use of her car").

[35]401 S.W.2d 274, 275 (Tex. Civ. App.—Austin 1966, no writ).

[36]954 S.W.2d at 196.

[37]*Id.*

property can be repaired and those in which it cannot.[38]  It noted the legal assumption we stated above—that when a vehicle is a total loss, "[c]ourts assume that the car can be replaced immediately," whereas when a car is repairable, the car cannot be repaired immediately.[39]  The court stated that a person whose car must be repaired rather than replaced thus suffers both damage to the car itself and the loss of the car's use, and the value of that loss of the car's *use* does not necessarily correlate to the value of the *car.*[40]  The court then made the common sense observation that "even a person whose car is totally destroyed might suffer loss of use damages, because it may be difficult or impossible to replace the car immediately."[41]  Recognizing that fact, the court stated that "the better policy might be to reconsider permitting loss of use damages in total destruction cases."[42]  But because the property in *Mondragon* had not been totally destroyed, the court did not in that case need to decide whether to adopt a new rule.[43]

---

[38] *Id.* at 196–97.

[39] *Id.* at 196.

[40] *Id.* at 196–97.

[41] *Id.* at 196.

[42] *Id.*

[43] *Id.*

We agree with the *Mondragon* court that we should reconsider whether we should permit loss of use damages in total destruction cases. To that end, we look to cases in other jurisdictions that have considered the question, and we discuss just a few of those cases here.

In *Fukida v. Hon/Hawaii Service & Repair*, the Supreme Court of Hawaii discussed the same rule in other states.[44] The court concluded that "[a] person whose vehicle is completely destroyed suffers an indistinguishable inconvenience, during the reasonable period of time necessary to obtain a replacement vehicle, from that borne by a person, whose vehicle is only partially damaged, while he or she awaits the completion of repairs."[45] It held that "where a person is deprived of the use of his or her property due to the tortious conduct of another, he or she may recover 'loss of use' damages," with the limitation that such damages are "as a general matter, limited to the period of time reasonably necessary to obtain a replacement (if the property is completely destroyed or cannot be returned by repair to its previous condition), [or] to effect repairs (if the property is merely damaged but reparable)."[46]

In *Bartlett v. Garrett*, a district court in New Jersey reached a similar conclusion to the *Fukida* court, stating that "[w]hen an automobile is damaged

---

[44]33 P.3d 204, 209–11 (2001).

[45]*Id.* at 211.

[46]*Id.*

17

through the negligence of another, temporary loss of the use of such vehicle pending repair or replacement is a reasonably foreseeable consequence of the defendant's tortious conduct," that the economic damages from the loss of the vehicle's use are an injury "different in [k]ind from [p]roperty damage," and that "[a] plaintiff in a total destruction case deprived of his reasonable loss-of-use expenses has simply not been made whole."[47] The court concluded that "[i]t would be illogical and unjust to make recovery of this component of economic loss depend upon the extent of property damage to the vehicle."[48]

In *Long v. McAllister*, discussed in *Fukida*, the Supreme Court of Iowa discussed the viability of the rule in that state, doing so "against the background that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed."[49] The court observed that in that state, damages to personal property were limited to the market value of the property, including loss of use damages in cases in which the property could be repaired, and therefore in cases in which the property was totally destroyed, loss of use damages were not recoverable. Discussing the reasoning behind the rule, the court stated,

---

[47]325 A.2d 866, 867 (N.J. Dist. Ct. 1974).

[48]*Id.*

[49]319 N.W.2d 256, 259 (Iowa 1982) (quotation marks omitted).

18

Inherent in our present rules governing damages to motor vehicles is the concept that the market value of the vehicle is the ceiling on recovery[,] whether the vehicle can be repaired or must be replaced. In some cases the owner will be fully compensated despite that limitation. Even when the vehicle is destroyed and delay occurs before compensation is received, interest on the market value of the vehicle from the date of the accident theoretically pays the owner for the delay.

. . . .

In other cases, however, the present rules plainly do not permit full compensation. Loss of use damages will be incurred as readily when a vehicle is totally destroyed or when it cannot be restored by repair to its prior condition as when the vehicle can be restored by repair. Just as loss of use damages are necessary for full compensation when the vehicle can be restored to its prior condition, they are warranted when the vehicle is destroyed or cannot be so restored. No logical basis exists for cutting them off when the total reaches the vehicle's market value before the injury.[50]

The court cited *Bartlett* for its pinpointing of "[t]he fallacy in the market value ceiling upon recovery in a destruction case."[51] The court went on to note that "[t]he origin of the market value limitation lies in history rather than logic" in that damages in such cases "were based on analogy to conversion," and the distinction of the damages available in the two situations perhaps "became important only with the advent of the motor vehicle and the practice of motor vehicle leasing and rental."[52] The court observed that "[l]oss of use damages are now permitted under various rules even in destruction cases in a growing number

---

[50]*Id.*

[51]*Id.* at 260 (quoting and discussing *Bartlett*, 325 A.2d at 867).

[52]*Id.*

of other jurisdictions," and it concluded that Iowa's rules on damages relating to motor vehicles "should be modified to permit full compensation including loss of use damages."[53]

In Texas, we hold to the view that a party "shall be compensated for the injury done."[54] Texas courts have therefore allowed recovery of damages in excess of the market value of personal property, but only when the property can be repaired rather than when property must be replaced.[55] Thus, in some cases we acknowledge that the recovery of the market value of property does not make the plaintiff whole.

The Supreme Court of California has addressed this issue, stating that "[t]here appears to be no logical or practical reason why a distinction should be drawn between cases in which the property is totally destroyed and those in

---

[53]*Id.* at 261 (citing cases in other jurisdictions in which loss of use damages were permitted in destruction of property cases).

[54]*Luna*, 667 S.W.2d at 119; *McCullough-Baroid Petroleum Serv. NL Indus. v. Sexton*, 618 S.W.2d 119, 120 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.) (stating that "[i]n assessing damages to chattels caused by negligent acts of tortfeasors, the courts of this state have always sought to provide '. . . fair, reasonable, and proper compensation for the injury inflicted as a proximate result of the wrongful act complained of'") (quoting *Pasadena State Bank v. Isaac*, 228 S.W.2d 127 (Tex. 1950)).

[55]*See Mondragon*, 954 S.W.2d at 195–96 (holding that loss of use damages are not limited to the total value of the car as a matter of law); *McCullough-Baroid*, 618 S.W.2d at 120 ("We are aware of no case which holds that the amount of recovery for repairs to the chattel plus loss of use of a chattel is limited by the fair market value of the chattel prior to the negligent act which caused the damage.").

20

which it has been injured but is repairable."[56]  The court there held that "when the owner of a negligently destroyed . . . vehicle has suffered injury by being deprived of the use of the vehicle during the period required for replacement, he is entitled . . . to recover for loss of use."[57]

The Supreme Court of Nebraska discussed the reasoning behind not allowing loss of use damages in total-destruction cases.[58]  It included a lengthy excerpt from a treatise on the law of remedies addressing the issue, which suggested three arguments for the rule:

> Loss of use claims are most commonly asserted for a period of time when the chattel is being repaired, but sometimes the chattel is destroyed and is not repairable.  In such cases, loss of use claims are sometimes asserted for the period required to replace the chattel.  A number of courts have refused to permit loss of use awards in cases of total destruction, and have limited recovery in such cases to the value of the article.
>
> [1] Destruction, of course, was closely analogous to a conversion, where the measure of damages was the value of the chattel at the time of conversion, and it was natural enough to import the conversion measure into the destruction situation.  There was probably some thought that the market value of the chattel—which reflected the right to use it gainfully—plus interest for the time the owner was deprived of it, actually furnished full compensation.
>
> [2] Another argument made against granting loss of use where there was total destruction sounds rather strange in modern ears.  The authors of Sedgwick on Damages argued that when compensation for the whole value of the property destroyed is sought, "it is upon

---

[56] *Reynolds v. Bank of Am. Nat'l T. & S. Ass'n*, 345 P.2d 926, 927 (1959).

[57] *Id.*

[58] *Chlopek v. Schmall*, 224 Neb. 78, 86–87, 396 N.W.2d 103, 109 (1986).

21

the theory that the plaintiff's entire interest in the property ceased at the time of the injury, and was replaced by a right to have the value of the property in money. Since, therefore, the plaintiff no longer has title to the property, he can no longer claim that he might make a future gain from it[.]" Such an argument probably would not be accepted, or even thought of, today. It is a conceptual argument that does not interest itself in whether the owner has actually lost something of value beyond the market value of his property; it interests itself only in a legal concept—passage of title—that is not a part of the real world of facts and has no significant relation to important facts of actual loss.

[3] A third argument against granting loss of use recovery where a chattel is totally destroyed is that to grant such recoveries opens the door to speculation. This argument, if acceptable, would seem to apply equally to any loss of use claim, whether there was destruction or merely damage. But the argument does not seem acceptable, because there is no essential reason why loss of use claims must be speculative. There is nothing speculative about the cost of a rental car for a specified time while the damaged vehicle is being repaired, nor is there anything speculative about the cost of a rental car for a specified time while a destroyed vehicle is being replaced.[59]

The Nebraska court re-examined the application of the rule in that state and concluded that in some cases, the rule plainly did not permit full compensation.[60] It thus held that "[l]oss of use damages will be incurred as readily when a vehicle is totally destroyed or when it cannot be restored by repair to its prior condition as when the vehicle can be restored by repair," and therefore "[j]ust as loss of use damages are necessary for full compensation when the vehicle can be restored to its prior condition, they are warranted when the vehicle is destroyed or cannot

---

[59]*Id.* at 109–10 (quoting D. Dobbs, Handbook on the Law of Remedies, § 5.11 at 384–85 (1973)) (paragraph breaks added).

[60]*Id.* at 110.

be so restored," and "[n]o logical basis exists for cutting them off when the total reaches the vehicle's market value before the injury."[61]

More recently, the Supreme Court of Alaska addressed the question in *Alaska Construction Equipment, Inc. v. Star Trucking, Inc.*,[62] in a case of first impression in that state. That court also discussed the history behind the rule, explaining,

> What should be the rule for loss of use damages in cases involving the total destruction of a chattel? We begin by noting that the general trend in other jurisdictions has been to allow loss of use damages in these cases. Similarly, it has been noted that traditional limitations on this kind of recovery were based on a questionable analogy between total destruction loss of use claims and historical trover or conversion claims. Earlier decisions assumed that the owner of the property would be fully compensated for its injury by receiving the market value of the destroyed chattel, making additional loss of use recovery excessive. Jurisdictions permitting loss of use damages in cases of total destruction have rejected this analogy, and its market-value ceiling on recovery, as a "fallacy."[63]

The court held that there is "no compelling reason to treat loss of use claims differently where the chattel is totally destroyed as opposed to only partially damaged."[64] As such, when property is totally destroyed, "loss of use damages

---

[61] *Id.*

[62] 128 P.3d 164, 168–69 (Alaska 2006).

[63] *Id.* (citations omitted).

[64] *Id.* at 169.

should be permitted for the period of time that is reasonably required to obtain a suitable replacement for the property."[65]

The court also held, however, that a plaintiff may not recover both loss of use damages and prejudgment interest on the value of the property.[66] The court reasoned that the interest "adequately compensates the owner of damaged property for economic loss for the period of time between the accident and the later award of the property's value."[67] This reasoning appears to comport with the reasoning in earlier Texas cases for not allowing a person whose property was destroyed to recover both loss of use damages and prejudgment interest.

In Texas, however, interest is allowed as part of the damages both when property is destroyed and when it is repairable.[68] That interest is part of the damages when property is repairable—and therefore when loss of use damages are available—belies the theory that awarding interest is an adequate substitute for loss of use damages, as suggested in *King*.[69] If interest is an adequate substitute for loss of use, then we would not allow it to be awarded in cases in

---

[65]*Id.*

[66]*Id.* at 170.

[67]*Id.*

[68]*See* Tex. Fin. Code Ann. § 304.102 (West 2006) ("A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest."); *West v. Carpenter*, 366 S.W.2d 826, 830 (Tex. Civ. App.—Amarillo 1963, writ ref'd n.r.e.).

[69]*See King*, 234 S.W.2d at 406–07.

24

which the property is repairable and loss of use damages are available. We agree with the reasoning of the courts concluding that there is no compelling or logical reason to treat loss of use claims differently in destroyed property cases than we do in repairable property cases.

We need not, however, go so far as to hold that loss of use damages are available in every case of destroyed property. Even were we to declare that the rule no longer has validity in Texas, loss of use damages would not be available to a plaintiff who could replace the property immediately, if only because the plaintiff generally could not show any loss of use attributable to the defendant's actions. And in this case, we are not called to decide whether loss of use damages should be available in all cases when property has been totally destroyed. We address the limited question of whether such damages should be available when an insurer unreasonably delays paying a claim. We answer that question in the affirmative: loss of use damages should be available when the claimant under an insurance policy cannot replace destroyed property because of the insurer's unreasonable delay in paying the claim.

In a case in which an insurer unreasonably delays paying the claim for a vehicle's total loss, the insurer's unreasonable action causes the owner of the destroyed property to be unable to immediately replace the vehicle and, consequently, to suffer the loss of the use of a vehicle. This is so because even if the property owner does not have the independent financial means to immediately replace the vehicle on his or her own, when the owner has a valid

25

claim under an insurance policy, the owner would be able to replace the vehicle immediately upon the claim's prompt payment. Thus, when an insurance policy covers the claim, it is only the insurer's unreasonable delay that causes the harm. Because the owner cannot replace the vehicle as quickly as the owner would be able to with a prompt claim payment, the owner suffers both property damage (in the form of the loss of the car's fair market value) as well as loss of the car's use. A plaintiff in an unreasonable-delay case who recovers both the fair market value for the property and loss of use damages is not being awarded a double recovery, and a plaintiff in such a case who is not allowed loss of use damages is simply not being made whole. Thus, the rationale behind the general rule in Texas has no application to such cases.

Accordingly, we hold that when an insurer unreasonably delays payment on a total loss, the claimant may recover both the fair market value of the vehicle and reasonable loss of use damages. Thus, if Insurer unreasonably delayed paying Campbell's claim, he may recover loss of use damages. We agree with the Austin court that in assessing loss of use damages, the defendant "takes his plaintiff as he finds him" and that courts are required "to consider the particular circumstances of the plaintiff and the facts of each case."[70] We overrule Morrison's sole issue on appeal.

---

[70]*Mondragon*, 954 S.W.2d at 194.

## Conclusion

Having overruled Morrison's issue on appeal, we affirm the trial court's order denying Morrison's motion for summary judgment, and we remand this case to the trial court for further proceedings.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  January 16, 2014