

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00275-CV

**AMERICAN ALTERNATIVE INSURANCE CORPORATION,**

Appellant

**v.**

**ROBERT DAVIS AND J&D TOWING, LLC,**

Appellee

**From the 12th District Court
Walker County, Texas
Trial Court No. 25,900-A**

## O P I N I O N

The Court's Opinion dated June 12, 2014 is withdrawn, and this Opinion dated June 26, 2014, is substituted therefor.[1]

In three issues, appellant, American Alternative Insurance Corporation ("AAIC"), challenges a judgment awarding loss-of-use damages in a total-loss case to appellee, J & D Towing, LLC ("J & D"). We reverse and render.

---

[1] We have withdrawn our June 12, 2014 Opinion to correct a clerical error in the signature block of the Opinion, which reflected that the case had been affirmed when, in fact, it had been reversed and rendered. The signature block in the June 26, 2014 Opinion reflects this change.

## I. BACKGROUND

The crux of this case involves whether a chattel owner should be compensated for measurable loss-of-use damages suffered when the owner's chattel is totally destroyed and the owner is unable to replace the chattel or obtain a substitute immediately. The dispute arises from an automobile accident between Robert Davis and Cassandra Brueland that occurred in Huntsville, Texas on December 29, 2011. At the time of the accident, Davis was driving a wrecker owned by his business, J & D. It is undisputed that Brueland was at fault for the accident and that the wrecker was rendered a total loss and unusable as a result of the accident. The only issue submitted to the jury pertained to J & D's damages for the loss of use of its wrecker.[2]

At trial, Davis testified that the wrecker in question was a 2002 Dodge 3500 with an 806 Vulcan wheel-lift unit on the rear.[3] Davis stated that this was J & D's only wrecker. Davis did not replace the wrecker until the second week of March 2012 because he claimed that he was financially unable to purchase a replacement wrecker.

---

[2] Specifically, the jury was asked only the following question:

> What sum of money, if now paid in cash, would fairly and reasonably compensate J & D Towing, LLC for its damages, if any, for the loss of use of the 2002 Dodge vehicle resulting from the occurrence in question?
>
> Loss of use of vehicle
>
> Consider the reasonable value of the use of a vehicle in the same class as the 2002 Dodge vehicle in question for the period of time between the occurrence in question and the time that J & D Towing, LLC was able to replace the 2002 Dodge vehicle.
>
> Answer in dollars and cents for damages, if any.

[3] In his deposition, Davis testified that the wrecker had been driven approximately 263,000 miles at the time of the accident.

Accordingly, J & D was unable to continue operations for a period of approximately four months.[4]

In explaining the delay in replacing the wrecker, Davis noted that Brueland's insurance company "low-balled" him on the value of the wrecker.[5] After several rounds of negotiations, J & D finally settled its claim against Brueland's insurance company for her policy limit of $25,000, which was more than the appraised value and purchase price of the wrecker. Afterwards, J & D made a claim for loss-of-use damages under its underinsured-motorist policy with AAIC, which had a policy limit of $85,000. AAIC denied J & D's claim and ultimately cancelled the policy. This lawsuit followed.

With regard to damages, Davis stated that the primary income of J & D comes from "repossessions; city rotation, which is through HPD of the City of Huntsville; and my private property tow[]aways and private calls as well, but the primary would be rotations—rotations, repossessions[,] and private properties." As a result of the accident, Davis was forced to turn down dispatch calls from the Huntsville Police Department. Davis also noted that the accident prevented J & D from fulfilling contractual repossessions for Capital Asset and Recovery and other tows requested by private parties. After explaining his calculations, Davis asserted that J & D lost between $27,866.25 and $29,416.25 from the time of the accident until the wrecker was replaced in March 2012.

---

[4] Davis testified that the State of Texas does not allow for the rental of wrecker vehicles.

[5] Davis admitted that Brueland's insurance company made him an offer for the wrecker approximately two weeks after the accident. He also stated that he notified AAIC about the accident on the same day or the day after the accident.

At the conclusion of the evidence, the jury returned a verdict in favor of J & D in the amount of $28,000. The trial court remitted the verdict to $22,500 and entered a final judgment on May 21, 2013. Subsequently, AAIC filed, among other things, a motion for judgment notwithstanding the verdict (hereinafter "JNOV"), arguing that the verdict violated Texas law regarding loss-of-use damages. Specifically, AAIC alleged that: "When a chattel is a total loss and not susceptible to repair[,] the owner is not entitled to additional recovery for loss of use and is only entitled to recover the market value of the chattel." After a hearing, the trial court denied AAIC's JNOV motion, and this appeal followed.

## II. LOSS-OF-USE DAMAGES

In its first issue, AAIC contends that the trial court erred by submitting the issue of loss-of-use damages to the jury over its objection because such damages are not permitted when a vehicle is deemed to be a total loss. AAIC's second issue pertaining to the trial court's denial of its JNOV motion is premised on the same argument that loss-of-use damages are not available in total-loss cases.

### A. Jury-Charge Error

"The trial court enjoys wide latitude in framing a jury charge and is given broad latitude to determine the propriety of explanatory instructions and definitions." *Hatfield v. Solomon*, 316 S.W.3d 50, 62 (Tex. App—Houston [14th Dist.] 2010, no pet.) (citing *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998)); *see Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) ("We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard."). A trial court

abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 50 (Tex. App.—Corpus Christi 2001, no pet.); *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). To determine whether an alleged error in the jury charge is reversible, we consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety, and we reverse the trial court only when the error in the charge amounted to such a denial of the rights of the complaining party that it probably caused the rendition of an improper judgment. *Doe*, 43 S.W.3d at 50; *see* TEX. R. APP. P. 44.1(a)(1); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003); *Recognition Commc'ns, Inc. v. Am. Auto Ass'n, Inc.*, 154 S.W.3d 878, 885 (Tex. App.—Dallas 2005, pet. denied). Charge error is generally considered harmful if it relates to a contested, critical issue. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009).

## B.    JNOV

A trial court may disregard a jury's verdict and render a JNOV if there is no evidence to support the jury's findings or if a directed verdict would have been proper. *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex. 1998); *see* TEX. R. CIV. P. 301. We review the trial court's ruling on a motion for JNOV under a legal sufficiency standard. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007). We must uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner*, 289 S.W.3d at 830. "The final test for legal

sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A JNOV should be granted: (1) when the evidence is conclusive, and one party is entitled to recover as a matter of law; or (2) when a legal principle precludes recovery. *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

## C.    Discussion

Texas law distinguishes between property that was damaged to the point of being totally destroyed and damaged property that can be repaired. For decades, Texas courts have held that, in a suit for damages for personal property that has been totally destroyed, the proper measure of damages is the fair market value of the property at the time it was destroyed. *Thomas v. Oldham*, 895 S.W.2d 352, 359 (Tex. 1995) ("The standard for measuring damages to personal property is the difference in its market value immediately before and immediately after the injury, at the place where the damage occurred."); *Waples-Platter Co. v. Commercial Standard Ins. Co.*, 156 Tex. 234, 236, 294 S.W.2d 375, 376-77 (1956); *Pasadena State Bank v. Isaac*, 149 Tex. 47, 50, 228 S.W.2d 127, 128 (1950); *see Tex. Farm Bureau Mut. Ins. Co. v. Wilde*, 385 S.W.3d 733, 737 (Tex. App.—El Paso 2012, no pet.) (stating that a plaintiff whose property is totally destroyed is limited to the recovery of market-value damages); *Hartford Ins. Co. v. Jiminez*, 814 S.W.2d 551, 552 (Tex. App.—Houston [1st Dist.] 1991, no writ) (stating that the measure of damages in a total loss case is "reasonable market value when destroyed"); *Riddell v. Mayes*, 533 S.W.2d 910, 911 (Tex. Civ. App.—Waco 1976, no writ) ("But, when the

chattel is totally destroyed, the measure of damages is the difference in the market value immediately before and immediately after injury, and no additional recovery can be had for loss of use of the chattel while it is being replaced. . . . The reason for not allowing damages for loss of use when the chattel is totally destroyed is because such damages are included as part of the award for total loss viz:  the difference in the market value immediately before and immediately after the injury.").  In other words, a chattel owner can recover only the market value of the property, not loss-of-use damages, in a total-loss case.  *See Thomas*, 895 S.W.2d at 359; *Waples-Platter Co.*, 156 Tex. at 236, 294 S.W.2d at 376-77; *Isaac*, 149 Tex. at 50, 228 S.W.2d at 128; *see also Wilde*, 385 S.W.3d at 737; *Jiminez*, 814 S.W.2d at 552; *Pickett v. Willis Trucking Co.*, 624 S.W.2d 664, 668-69 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) ("When a chattel has been totally destroyed, no additional recovery for loss of use is allowed."); *Riddell*, 533 S.W.2d at 911.  On the other hand, when personal property, such as a vehicle, is damaged but repairable, the owner may recover the cost of repairs and damages for the loss of use of the vehicle.  *See Riddell*, 533 S.W.2d at 911; *see also Morrison v. Campbell*, No. 02-13-00174-CV, 2014 Tex. App. LEXIS 542, at *8 (Tex. App.—Fort Worth Jan. 18, 2014, no pet. h.).

In the instant case, it is undisputed that J & D's wrecker was a total loss. Therefore, under the above-mentioned law, J & D would only be entitled to the market value of the wrecker and could not recover loss-of-use damages.  However, in its brief, J & D relies heavily on two Texas cases for the proposition that loss-of-use damages are available in total-loss cases.  *See Mondragon v. Austin*, 954 S.W.2d 191, 193-95 (Tex.

App.—Austin 1997, writ denied); *see also Morrison*, 2014 Tex. App. LEXIS 542, at *33.

We disagree.

First, we note that neither of these cases is binding precedent on this Court.

Second, we do not believe that the *Mondragon* case is applicable in this matter because

the case did not involve a total loss. *See* 954 S.W.2d at 193. In fact, the *Mondragon* Court

noted the following:

> In Texas, a person whose car has been totally destroyed as a result of a tort
> may recover only the value of the car, while a person whose car is
> repairable may also recover for loss of use of the car. Because Mondragon
> does not challenge the trial court's apparent belief that the car was not a
> total loss, we will assume that the car was repairable. Accordingly, Austin
> as the owner may recover both the cost of repairs and the value of the loss
> of use of the car.

*Id.* (internal citations omitted). We do recognize that the *Mondragon* Court stated that it

believed "the better policy might be to reconsider permitting loss of use damages in

total destruction cases." *Id.* at 196. However, this language amounts to dicta, as

evidenced by the Court's recognition that "this case does not present those facts." *Id.*

As such, we are not persuaded by J & D's reliance on the *Mondragon* decision.

In *Morrison*, the Fort Worth Court of Appeals specifically stated that it "need not,

however, go so far as to hold that loss of use damages are available in every case of

destroyed property." 2014 Tex. App. LEXIS 542, at *31.[6] Instead, the *Morrison* Court

constrained its holding to those cases where an insurer unreasonably delays in paying a

---

[6] On May 8, 2014, the Fort Worth Court of Appeals denied a motion for en banc reconsideration filed by Morrison. However, it is noteworthy that Chief Justice Livingston and Justices Gardner and Gabriel—or, in other words, three of the seven justices on the Fort Worth Court of Appeals—voted to grant Morrison's motion for en banc reconsideration.

claim. *See id.* at **32-33 ("[W]e hold that when an insurer unreasonably delays payment on a total loss, the claimant may recover both the fair market value of the vehicle and reasonable loss of use damages.").

In this case, the jury was not asked whether AAIC or Brueland's insurer unreasonably delayed paying a claim. Instead, the jury in this case was asked a single question pertaining to loss-of-use damages. And even if we were to follow the *Morrison* opinion, which we decline to do, we believe that the determination of unreasonable delay would be a fact question for the jury to answer—something that was not done in this case.[7] *See, e.g., Morrison*, 2014 Tex. App. LEXIS 542, at *34 (affirming the trial court's order denying summary judgment and remanding the case for further proceedings, presumably for a fact determination as to whether the insurance company unreasonably delayed in paying the claim). And though the *Morrison* court cites numerous opinions from high courts from other states, we question whether an intermediate appellate court in Texas should interpret case law in such a way that could result in a radical, wholesale change in insurance law that the parties in this case did not contemplate when they entered into the insurance contract.[8] *See SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam) (holding that intent manifested in contract's

---

[7] It is also worth mentioning that the *Morrison* opinion issued while this appeal was pending; therefore, it was not considered by the trial court, nor the jury, in this case.

[8] Specifically, the *Morrison* Court cited to opinions from the Supreme Court of Hawaii, a district court in New Jersey, the Supreme Court of Iowa, the Supreme Court of California, the Supreme Court of Nebraska, and the Supreme Court of Alaska. *See Alaska Constr. Equip., Inc. v. Star Trucking, Inc.*, 128 P.3d 164, 168-69 (Alaska 2006); *Fukida v. Hon/Hawaii Service & Repair*, 97 Haw. 38, 33 P.3d 204, 209-11 (Haw. 2001); *Chlopek v. Schmall*, 224 Neb. 78, 86-87, 396 N.W.2d 103, 109 (Neb. 1986); *Long v. McAllister*, 319 N.W.2d 256, 259 (Iowa 1982); *Reynolds v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 53 Cal. 2d 49, 345 P.2d 926, 927 (Cal. 1959); *see also Bartlett v. Garrett*, 130 N.J. Super. 193, 325 A.2d 866, 867 (N.J. Dist. Ct. 1974).

language "is not changed simply because the circumstances do not precisely match the scenarios anticipated" when the contract was formed and that "a court interprets a contract by ascertaining the true objective intentions of the parties, based on the contract language"). Such changes are probably best reserved for the Texas Legislature or the Texas Supreme Court. Therefore, in the interest of judicial restraint, we are not inclined to overturn this Court's *Riddell* opinion or more than fifty years of Texas case law governing damages in total-loss cases.

Based on the foregoing, and on our review of the pleadings, the evidence, and the charge in its entirety, we conclude that the trial court abused its discretion in submitting a question authorizing loss-of-use damages in this total-loss case. *See Shupe*, 192 S.W.3d at 579; *Bilotto*, 985 S.W.2d at 23; *see also Hatfield*, 316 S.W.3d at 62. As a result of the submitted question, J & D was awarded loss-of-use damages to which it was not entitled. Accordingly, we hold that the submission of the question pertaining to loss-of-use damages in a total-loss case caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *see also Hawley*, 284 S.W.3d at 856; *Johnson*, 106 S.W.3d at 723; *Recognition Comm'cns, Inc.*, 154 S.W.3d at 885; *Doe*, 43 S.W.3d at 51; *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 471 (Tex. App.—San Antonio 1998, pet. denied) (noting that jury-charge error is harmful because "the court's instructions become the law of the case and are to be accepted by the jury as the guide on which they must rely"). Furthermore, because loss-of-use damages are not available in a total-loss case such as this, we further conclude that the trial court erred in denying AAIC's JNOV motion. *See*

TEX. R. CIV. P. 301; *Brown*, 963 S.W.2d at 513; *see also Davis*, 848 S.W.2d at 173.  We

sustain appellant's first and second issues.[9]

### III.    CONCLUSION

Based on the foregoing, we reverse the judgment of the trial court and render

judgment that J & D take nothing by this suit.  *See* TEX. R. APP. P. 43.3.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Reversed and rendered
Opinion delivered and filed June 26, 2014
[CV06]

---

[9] Based on our disposition, we need not address AAIC's third issue at this time.  *See* TEX. R. APP. P. 47.1.